02-11-101-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00101-CR

 

 


 
 
 Coty Ray Hunt
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM Criminal
District Court No. 3 OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I.  Introduction

          Appellant
Coty Ray Hunt appeals his conviction on two counts of aggravated robbery with a
deadly weapon.  We will affirm.

II.  Background

          On
the evening of April 28, 2010, Hunt entered an Albertsons grocery store, made
his way to a private office, and ordered two store employees at gunpoint to
give him money.  The employees complied, and Hunt made off from the store with
the money.  Authorities eventually arrested Hunt and found a .45 semiautomatic
handgun, which matched the description of the gun used during the robbery, in
the same vehicle that Hunt was riding in when he was arrested.  Hunt admitted
to investigators that he committed the robbery, but he claimed to have used a
fake BB gun during the offense.  A jury convicted Hunt on both counts of
aggravated robbery with a deadly weapon and assessed his punishment at life
imprisonment for both counts.  The trial court sentenced Hunt in accordance
with the jury’s verdicts.

III.  Disabled Juror
and Continuation of
Trial

          In
his first point, Hunt argues that the trial court abused its discretion by
dismissing a juror as disabled and continuing the trial with eleven jurors.  He
contends that “[t]here was insufficient proof to show that Juror [S.] was
disabled from jury service” and that “the trial court abused its discretion by
not simply recessing the trial for a day.”[2]

          The
Texas constitution requires a jury in a felony criminal trial to be composed of
twelve members.  Tex. Const. art. V, § 13.  But if a juror dies or becomes
“disabled” from sitting, the remaining impaneled jury has the power to render
the verdict.  Id.; see Tex. Code Crim. Proc. Ann. art. 36.29(a)
(West Supp. 2011) (providing that after a felony trial “begins and a juror dies
or, as determined by the judge, becomes disabled from sitting at any time
before the charge of the court is read to the jury, the remainder of the jury
shall have the power to render the verdict.”).  A juror is disabled when the
juror is physically, emotionally, or mentally impaired in some way that hinders
his or her ability to perform the duty of a juror.  Brooks v. State, 990
S.W.2d 278, 286 (Tex. Crim. App.), cert. denied, 528 U.S. 956 (1999); see
Reyes v. State, 30 S.W.3d 409, 411 (Tex. Crim. App. 2000) (stating that
disability is not limited to physical disease, but also includes any condition
that inhibits a juror from fully and fairly performing the functions of a
juror).  The determination of whether a juror is disabled is within the
discretion of the trial court.  Brooks, 990 S.W.2d at 286.

          The
record demonstrates that after the jury was impaneled and sworn but before
opening arguments were made, Juror S. notified the trial court of her
concern about sitting on the jury because she had to take her mother to a
doctor’s appointment.[3]  The trial court initially
asked Juror S. to find “someone else to take care of the doctor’s
appointment,” but Juror S. stated that she did not “have anybody else.”  Juror.
S. explained that her eighty-two-year-old mother had fallen down two weeks earlier,
puncturing her lung and breaking a rib, and that her mother needed an EKG “to
make sure that she doesn’t get pneumonia in her lungs.”  Juror S. made a
phone call to see if she could find someone to take her mother to the
appointment, but she was unsuccessful after speaking to both her mother and her
father.  Juror S. told the trial court that it had taken “an hour just for
her [mother] to even understand who she’s talking to -- to even get
through to -- she say[s] she’s hurting, she’s laying in the bed, I
mean.”  After the trial court questioned Juror S. some more, the State
questioned her, and the following exchange took place:

          [Prosecutor]: 
Here’s the question, and only you can answer that.  As you sit here right now,
are you going to be sitting there thinking about your mom?

 

          [Juror S.]: 
Yes.

 

          [Prosecutor]: 
How she’s doing?

 

          [Juror S.]: 
Very much so after this phone call.

 

          [Prosecutor]: 
You look like you’re very upset.

 

          [Juror S.]: 
I am.

 

          [Prosecutor]: 
You look like you’re probably near tears.

 

          [Juror S.]: 
Yes.

 

          [Prosecutor]: 
Is it to the point where you’re not going to be able to give this trial your
full consideration?

 

          [Juror S.]: 
I won’t.

 

          [Prosecutor]: 
I can tell you’re about to start crying.

 

          [Juror S.]: 
I don’t, because she just told me she’s hurting so.

 

          [Prosecutor]: 
And for the record you are --

 

          [Juror S.]: 
I’m very upset.

 

          [Prosecutor]: 
-- have begun crying.

 

          So you’re
not going to be able to give this trial your full attention?  You’re shaking
your head no.

 

          [Juror S.]: 
No.

 

          [Prosecutor]: 
You won’t be able to concentrate and listen to the evidence --

 

          [Juror S.]: 
Right.

 

          [Prosecutor]: 
-- because you’re going to be so preoccupied with your mother’s health
condition and her situation.

 

          [Juror S.]: 
Correct.

The
trial court decided to dismiss Juror S. from service “due to the illness
of [her] mother and the funeral and the fact that those two things combined
would not allow [her] to concentrate on this trial.”

          Based
on the foregoing, the trial court could have reasonably concluded that Juror S.
was emotionally inhibited from fully and fairly performing the functions of a
juror.  See Reyes, 30 S.W.3d at 411; Brooks, 990 S.W.2d at
286.  Accordingly, we hold that the trial court did not abuse its discretion by
concluding that Juror S. was disabled from sitting on the jury.  See
Tex. Code Crim. Proc. Ann. art. 36.29(a); see also Stephens v. State,
276 S.W.3d 148, 152 (Tex. App.—Amarillo 2008, pet. ref’d) (holding that trial
court did not abuse its discretion by dismissing juror as disabled due to “an
emotional state which hindered her ability to perform her duties as a juror”).

          To
the extent that Hunt argues the trial court abused its discretion by not
recessing the trial after dismissing Juror S., article 36.29 requires the
trial to proceed with eleven jurors if a juror becomes disabled.  See Hill
v. State, 90 S.W.3d 308, 315 (Tex. Crim. App. 2002).  We overrule Hunt’s
first point.

IV.  Mistrial

          In
his second point, Hunt argues that the trial court erred by denying his motion
for mistrial after the trial court sustained his objection to part of the
State’s jury argument.

          When
the trial court sustains an objection and instructs the jury to disregard but
denies a defendant’s motion for a mistrial, the issue is whether the trial
court abused its discretion by denying the mistrial.  Hawkins v. State,
135 S.W.3d 72, 76–77 (Tex. Crim. App. 2004).  When the refusal to grant a
mistrial follows an objection for improper jury argument, we balance three
factors:  (1) the severity of the misconduct (prejudicial
effect), (2) curative measures, and (3) the certainty of conviction
absent the misconduct.  Id.; Mosley v. State, 983 S.W.2d 249, 259
(Tex. Crim. App. 1998) (op. on reh’g), cert. denied, 526 U.S. 1070
(1999).  Only in extreme circumstances, when the prejudice caused by the
improper argument is incurable, i.e., “so prejudicial that expenditure of
further time and expense would be wasteful and futile,” will a mistrial be
required.  Hawkins, 135 S.W.3d at 77.  In most instances, an instruction
to disregard will cure the alleged harm.  Wesbrook v. State, 29 S.W.3d
103, 115 (Tex. Crim. App. 2000), cert. denied, 532 U.S. 944 (2001).  We
review a trial court’s ruling on a motion for mistrial for an abuse of
discretion.  Hawkins, 135 S.W.3d at 77.

          The
trial court sustained Hunt’s “outside-the-record” objection but denied his
motion for mistrial in regard to this part of the State’s closing argument at
the guilt/innocence phase:  “And you know that car when [Hunt] was arrested was
taken into police custody and held in a secure bay until they could get a
search warrant.  Mandy Harvell calls, and I know that that’s his girlfriend,
and I suspect there’s a whole lot more involved there.”  [Emphasis added.] 
Assuming without deciding that the State’s argument—implying that Harvell was
involved in the underlying offense in some way—was improper, we cannot conclude
that the trial court abused its discretion.  Hunt objected that the State’s
argument referenced facts that were outside of the record, but there was
evidence from which the jury could reasonably have inferred that Harvell was involved
in the robbery—Harvell was Hunt’s girlfriend, Harvell was arrested when Hunt
was arrested, Harvell’s vehicle was used during the robbery, and the gun that
Hunt used during the robbery was found in Harvell’s vehicle.  Also, the State later
made the following related argument that Hunt did not object to:

He mentioned
immunity.  Here’s how it works.  When we believe someone is a party to an
offense, we would have to require that we cut a deal with them, give them
immunity for their testimony.

 

          Make no
mistake, we fully believe Mandy Harvell was a party to this crime, and we’re
not willing to do that.  We’re not going to cut a deal with her for what he
did.

Hunt
argues that the State “continued with [its] interjection of improper and unknown
facts into the case” during an exchange in which the State objected to part of defense
counsel’s closing argument and said that “[c]ounsel knows that we could not
call Ms. Harvell,” but the State’s comment was not part of its closing
argument, and it occurred before the State’s unobjected-to argument regarding
immunity for Harvell.  In light of all of this, the severity of the alleged
improper argument was considerably low.

          As
for the remaining factors that we must balance, the trial court immediately
instructed the jury to disregard the prosecutor’s argument, and there is nothing
in the record indicating that the jury did not do so.  See Colburn v. State,
966 S.W.2d 511, 520 (Tex. Crim. App. 1998) (stating that in the absence of
evidence to the contrary, appellate court presumes that jury followed
instruction to disregard).  Further, the certainty of Hunt’s conviction was
high absent the alleged improper argument.[4]  We hold that the trial
court did not abuse its discretion by denying Hunt’s motion for mistrial.  We
overrule Hunt’s second point.

V.  Conclusion

          Having
overruled both of Hunt’s points, we affirm the trial court’s judgments.

 

 

BILL MEIER
JUSTICE

 

PANEL: 
DAUPHINOT,
GARDNER, and MEIER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  March 15, 2012









[1]See Tex. R. App. P. 47.4.





[2]Contrary to the State’s
initial arguments, Hunt preserved these arguments for appellate review.





[3]Juror S. also had a
funeral to attend in Dallas.





[4]The evidence showed that
the individual responsible for committing the robbery wore a white baseball cap
during the offense.  Veronica Anderson, a service operations manager with
Albertsons, testified that she returned to the store after the robbery and watched
the video footage captured by the store’s surveillance cameras.  Shortly
thereafter, on her way home, she found a white baseball cap lying on the side
of the road about one mile from the store.  Subsequent testing revealed that
the profile from biological material obtained from the white cap matched the
profile from a buccal swab that authorities obtained from Hunt.