

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00101-CR

COTY RAY HUNT                                                                   APPELLANT

V.

THE STATE OF TEXAS                                                                   STATE

----------

## FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Coty Ray Hunt appeals his conviction on two counts of aggravated robbery with a deadly weapon. We will affirm.

### II. BACKGROUND

On the evening of April 28, 2010, Hunt entered an Albertsons grocery store, made his way to a private office, and ordered two store employees at

---

[1]*See* Tex. R. App. P. 47.4.

gunpoint to give him money. The employees complied, and Hunt made off from the store with the money. Authorities eventually arrested Hunt and found a .45 semiautomatic handgun, which matched the description of the gun used during the robbery, in the same vehicle that Hunt was riding in when he was arrested. Hunt admitted to investigators that he committed the robbery, but he claimed to have used a fake BB gun during the offense. A jury convicted Hunt on both counts of aggravated robbery with a deadly weapon and assessed his punishment at life imprisonment for both counts. The trial court sentenced Hunt in accordance with the jury's verdicts.

### III. DISABLED JUROR AND CONTINUATION OF TRIAL

In his first point, Hunt argues that the trial court abused its discretion by dismissing a juror as disabled and continuing the trial with eleven jurors. He contends that "[t]here was insufficient proof to show that Juror [S.] was disabled from jury service" and that "the trial court abused its discretion by not simply recessing the trial for a day."[2]

The Texas constitution requires a jury in a felony criminal trial to be composed of twelve members. Tex. Const. art. V, § 13. But if a juror dies or becomes "disabled" from sitting, the remaining impaneled jury has the power to render the verdict. *Id.*; *see* Tex. Code Crim. Proc. Ann. art. 36.29(a) (West Supp. 2011) (providing that after a felony trial "begins and a juror dies or, as determined

---

[2]Contrary to the State's initial arguments, Hunt preserved these arguments for appellate review.

2

by the judge, becomes disabled from sitting at any time before the charge of the court is read to the jury, the remainder of the jury shall have the power to render the verdict."). A juror is disabled when the juror is physically, emotionally, or mentally impaired in some way that hinders his or her ability to perform the duty of a juror. *Brooks v. State*, 990 S.W.2d 278, 286 (Tex. Crim. App.), *cert. denied*, 528 U.S. 956 (1999); *see Reyes v. State*, 30 S.W.3d 409, 411 (Tex. Crim. App. 2000) (stating that disability is not limited to physical disease, but also includes any condition that inhibits a juror from fully and fairly performing the functions of a juror). The determination of whether a juror is disabled is within the discretion of the trial court. *Brooks*, 990 S.W.2d at 286.

The record demonstrates that after the jury was impaneled and sworn but before opening arguments were made, Juror S. notified the trial court of her concern about sitting on the jury because she had to take her mother to a doctor's appointment.[3] The trial court initially asked Juror S. to find "someone else to take care of the doctor's appointment," but Juror S. stated that she did not "have anybody else." Juror. S. explained that her eighty-two-year-old mother had fallen down two weeks earlier, puncturing her lung and breaking a rib, and that her mother needed an EKG "to make sure that she doesn't get pneumonia in her lungs." Juror S. made a phone call to see if she could find someone to take her mother to the appointment, but she was unsuccessful after speaking to both her mother and her father. Juror S. told the trial court that it had taken "an hour just

---

[3]Juror S. also had a funeral to attend in Dallas.

for her [mother] to even understand who she's talking to -- to even get through to -- she say[s] she's hurting, she's laying in the bed, I mean." After the trial court questioned Juror S. some more, the State questioned her, and the following exchange took place:

[Prosecutor]: Here's the question, and only you can answer that. As you sit here right now, are you going to be sitting there thinking about your mom?

[Juror S.]: Yes.

[Prosecutor]: How she's doing?

[Juror S.]: Very much so after this phone call.

[Prosecutor]: You look like you're very upset.

[Juror S.]: I am.

[Prosecutor]: You look like you're probably near tears.

[Juror S.]: Yes.

[Prosecutor]: Is it to the point where you're not going to be able to give this trial your full consideration?

[Juror S.]: I won't.

[Prosecutor]: I can tell you're about to start crying.

[Juror S.]: I don't, because she just told me she's hurting so.

[Prosecutor]: And for the record you are --

[Juror S.]: I'm very upset.

[Prosecutor]: -- have begun crying.

So you're not going to be able to give this trial your full attention? You're shaking your head no.

4

[Juror S.]: No.

[Prosecutor]: You won't be able to concentrate and listen to the evidence --

[Juror S.]: Right.

[Prosecutor]: -- because you're going to be so preoccupied with your mother's health condition and her situation.

[Juror S.]: Correct.

The trial court decided to dismiss Juror S. from service "due to the illness of [her] mother and the funeral and the fact that those two things combined would not allow [her] to concentrate on this trial."

Based on the foregoing, the trial court could have reasonably concluded that Juror S. was emotionally inhibited from fully and fairly performing the functions of a juror. *See Reyes*, 30 S.W.3d at 411; *Brooks*, 990 S.W.2d at 286. Accordingly, we hold that the trial court did not abuse its discretion by concluding that Juror S. was disabled from sitting on the jury. *See* Tex. Code Crim. Proc. Ann. art. 36.29(a); *see also Stephens v. State*, 276 S.W.3d 148, 152 (Tex. App.—Amarillo 2008, pet. ref'd) (holding that trial court did not abuse its discretion by dismissing juror as disabled due to "an emotional state which hindered her ability to perform her duties as a juror").

To the extent that Hunt argues the trial court abused its discretion by not recessing the trial after dismissing Juror S., article 36.29 requires the trial to proceed with eleven jurors if a juror becomes disabled. *See Hill v. State*, 90 S.W.3d 308, 315 (Tex. Crim. App. 2002). We overrule Hunt's first point.

5

## IV. MISTRIAL

In his second point, Hunt argues that the trial court erred by denying his motion for mistrial after the trial court sustained his objection to part of the State's jury argument.

When the trial court sustains an objection and instructs the jury to disregard but denies a defendant's motion for a mistrial, the issue is whether the trial court abused its discretion by denying the mistrial. *Hawkins v. State*, 135 S.W.3d 72, 76–77 (Tex. Crim. App. 2004). When the refusal to grant a mistrial follows an objection for improper jury argument, we balance three factors: (1) the severity of the misconduct (prejudicial effect), (2) curative measures, and (3) the certainty of conviction absent the misconduct. *Id.*; *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999). Only in extreme circumstances, when the prejudice caused by the improper argument is incurable, i.e., "so prejudicial that expenditure of further time and expense would be wasteful and futile," will a mistrial be required. *Hawkins*, 135 S.W.3d at 77. In most instances, an instruction to disregard will cure the alleged harm. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000), *cert. denied*, 532 U.S. 944 (2001). We review a trial court's ruling on a motion for mistrial for an abuse of discretion. *Hawkins*, 135 S.W.3d at 77.

The trial court sustained Hunt's "outside-the-record" objection but denied his motion for mistrial in regard to this part of the State's closing argument at the guilt/innocence phase: "And you know that car when [Hunt] was arrested was

6

taken into police custody and held in a secure bay until they could get a search warrant. *Mandy Harvell calls, and I know that that's his girlfriend, and I suspect there's a whole lot more involved there*." [Emphasis added.] Assuming without deciding that the State's argument—implying that Harvell was involved in the underlying offense in some way—was improper, we cannot conclude that the trial court abused its discretion. Hunt objected that the State's argument referenced facts that were outside of the record, but there was evidence from which the jury could reasonably have inferred that Harvell was involved in the robbery—Harvell was Hunt's girlfriend, Harvell was arrested when Hunt was arrested, Harvell's vehicle was used during the robbery, and the gun that Hunt used during the robbery was found in Harvell's vehicle. Also, the State later made the following related argument that Hunt did not object to:

> He mentioned immunity. Here's how it works. When we believe someone is a party to an offense, we would have to require that we cut a deal with them, give them immunity for their testimony.
>
> Make no mistake, we fully believe Mandy Harvell was a party to this crime, and we're not willing to do that. We're not going to cut a deal with her for what he did.

Hunt argues that the State "continued with [its] interjection of improper and unknown facts into the case" during an exchange in which the State objected to part of defense counsel's closing argument and said that "[c]ounsel knows that we could not call Ms. Harvell," but the State's comment was not part of its closing argument, and it occurred before the State's unobjected-to argument regarding

immunity for Harvell.  In light of all of this, the severity of the alleged improper argument was considerably low.

As for the remaining factors that we must balance, the trial court immediately instructed the jury to disregard the prosecutor's argument, and there is nothing in the record indicating that the jury did not do so.  *See Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998) (stating that in the absence of evidence to the contrary, appellate court presumes that jury followed instruction to disregard).  Further, the certainty of Hunt's conviction was high absent the alleged improper argument.[4]  We hold that the trial court did not abuse its discretion by denying Hunt's motion for mistrial.  We overrule Hunt's second point.

## V. CONCLUSION

Having overruled both of Hunt's points, we affirm the trial court's judgments.

BILL MEIER
JUSTICE

---

[4]The evidence showed that the individual responsible for committing the robbery wore a white baseball cap during the offense.  Veronica Anderson, a service operations manager with Albertsons, testified that she returned to the store after the robbery and watched the video footage captured by the store's surveillance cameras.  Shortly thereafter, on her way home, she found a white baseball cap lying on the side of the road about one mile from the store.  Subsequent testing revealed that the profile from biological material obtained from the white cap matched the profile from a buccal swab that authorities obtained from Hunt.

8

PANEL:  DAUPHINOT, GARDNER, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  March 15, 2012