Carl BROOKS, Appellant,

v.

The STATE of Texas.

No. 72806.

Court of Criminal Appeals of Texas, En Banc.

March 31, 1999.

Rehearing Denied May 26, 1999.

Donald H. Fidler, Jr., San Antonio, for appellant.

Enrico B. Valdez, Assist. DA, Edward F. Shaughnessy, III, Assist. DA, San Antonio, Matthew Paul, State's Atty., Austin, for the State.

## OPINION

McCORMICK, P.J., delivered the opinion of the Court, in which KELLER, HOLLAND and KEASLER, JJ., joined;

Appellant was convicted of capital murder that was committed on or about October 26, 1995. V.T.C.A., Penal Code, Section 19.03(a)(2). At the punishment phase of trial, the jury answered the special issues in such a manner as to require the trial court to sentence appellant to death. Article 37.071, Section 2(b) and (e), V.A.C.C.P. The trial judge sentenced appellant to death pursuant to Article 37.071, Section 2(g). Direct appeal to this Court is automatic. Article 37.071, Section 2(h). Appellant raises twenty-four points of error. We will affirm.

The evidence presented at trial shows that Reginald Taylor and his friend, Demeture DeLane, met the victim, Frank Johnson, on the afternoon of October 26 at the Candlestick Circle Apartments in San Antonio. Thereafter, Reginald and Demeture accompanied the victim to an automotive shop so that he could sell "weed" (marijuana) to some individuals. The three of them drove to the shop in the victim's car.

When they arrived the victim parked the car in the front of the building. The victim went inside the shop with a "pound of weed wrapped up in a towel." Reginald and Demeture waited in the car for the victim to return. Shortly thereafter, Arnold Johnson ("Little Arnold" no relation to the victim) came to the car and told Reginald and Demeture that the victim "said bring the car around to the back." Little Arnold then drove the car himself around to the back of the building and parked it there. Reginald and Demeture were told to get out of the car. All three then proceeded around to the front of the building. Reginald was ordered into the shop by appellant at gun point. Meanwhile, Demeture pulled out his own gun and ran from the building.

Appellant asked the victim about the whereabouts of his money and any more marijuana. The victim initially told appellant that all he had was $25.00 and the pound of marijuana, but later said that he had six more ounces of marijuana in the car. Someone was sent to get the additional marijuana from the car. At this point, the victim and Reginald were ordered to take off most of their clothes. Meanwhile, Little Arnold had backed the car up to the door of the auto shop. The victim and Reginald were then told to get into the car. Appellant ordered the victim to sit in the front passenger seat and Reginald to sit behind the driver in the rear seat. Appellant sat behind the victim and Little Arnold drove the car. Appellant was holding his TEC–9 semi-automatic pistol. Reginald was ordered to put his head down between his legs and not look up. Appellant told Reginald that if he looked up he would be shot.

Soon thereafter, Little Arnold asked the victim "Do you feel like you are going to die today?" To which the victim said "yes." At that instant, appellant shot the victim in the back of the neck. Little Arnold then ordered Reginald to get out of the car whereupon Reginald jumped from the car. As Reginald was jumping from the moving car, he saw appellant fire a second shot into the back of the victim's head. When Reginald was out of the car, he briefly looked back at the car and then began to run down the street.

Reginald asked a man he saw to "call 911 and tell them to come out here to this street, I just had a homeboy get shot in the back of the head." Reginald was then given a ride home from a lady whom he flagged down as he ran down the street. At home, Reginald talked with his brother about the shooting. After he got dressed, Reginald went to Larry's house. Larry was a close friend of the victim's. Both Reginald and Larry returned to the scene of the shooting where the only thing they noticed was blood on the street. Reginald and Larry then went to the victim's mother's house to tell her what had happened. After they told her what had taken place, Reginald and Larry drove to the San Antonio police substation so that Reginald could make a statement.

Meanwhile, San Antonio Police Officer Emanuel Keith received a dispatch for a "down and out." According to Officer Keith a "down and out" meant that the call would include an intoxicated vagrant, or someone sick or injured in the roadway, or someone who couldn't walk or was unable to do anything for themselves at that time. Upon arriving on the scene, Officer Keith was told by a bystander that there was someone lying on the ground in the street. Officer Keith testified that he found the victim lying on the ground. The victim was wearing a T-shirt, boxer shorts, and a pair of socks. Keith also testified that the body had no shoes, no pants, or other items of clothing. He also testified that blood was "oozing" from the victim's head.

Demeture DeLane testified that he and Reginald Taylor met the victim at the Candlestick Apartments on October 26. He testified that all three of them got into the victim's car and drove to the shop so that the victim could sell some marijuana. At the shop, Demeture watched the victim exit the car and take a bag of marijuana

into the building. Demeture testified that Little Arnold came out of the building and drove the car to the back of the shop and then ordered them to get out of the car. Demeture also recalled that appellant pointed a TEC–9 semi-automatic handgun at him and told him not to run. However, Demeture instead took off running.

Detective Daniel Terrill with the San Antonio Police Department collected and processed the crime scene evidence. Detective Terrill recovered two shell casings and a blood sample from the pavement. Sergeant Brian Custard, also with the San Antonio Police Department, processed the victim's car found at the intersection of Hedges and Terrell Street. Custard found a spent bullet located a few feet from the driver's side of the car. He also found a shell casing in the car's right front floorboard. Sergeant Custard found three 9 millimeter ammo rounds inside the car, and a rifle round. An AK–47 assault rifle was discovered in the trunk. The three 9 millimeter rounds were found in the floorboard of the backseat and on the front seat. Custard located a blood stain on the ground next to the car and a bullet hole in the windshield. He testified that brain matter was discovered on the passenger door. There were two sets of fingerprints lifted from the car. Ralph Looney, a latent fingerprint examiner for the San Antonio Police Department, testified that the prints from the right passenger door window of the car matched appellant's left ring finger. Richard Stengal, a retired firearms and tool mark examiner, testified that the cartridge cases recovered from the crime scene were all fired from the same weapon. He identified them to be nine millimeter casings. Both bullets showed the same type of markings and were consistent with being fired from a TEC–9 semi-automatic handgun.

Carolyn Revercomb, a former assistant medical examiner with Bexar County, performed the autopsy on the victim on October 27. She testified that the victim had two gunshot wounds. Gunshot wound No.

1 was fired at close range. It entered the decedent on the back of the left neck and passed through the esophagus and passed out through the right front of the neck. Gunshot No. 2, also fired from close range, entered the back of the head and passed through the skull, into and through the brain, and exited the left side of the forehead. Dr. Revercomb testified that the two gunshots were fired at close range because there was blackening or soot located on the skin surrounding the wounds. She concluded that the these wounds were inflicted within a range of six inches. Dr. Revercomb also testified that both wounds were potentially fatal. At the conclusion of the autopsy, the victim was tested for drug use, but the toxicological report found no evidence that he was under the influence of any drug or alcohol at time of death.

Zackery Greenwood testified that on October 26 he was having his car repaired at the auto shop. He observed Arnold Johnson and appellant arrive there together around noon that day. Zackery knew appellant because they were at one time both involved with the same girl. He recalled seeing appellant with a TEC–9 that day at the auto shop. Zackery also remembers seeing the victim driving a vehicle with two passengers that day. He recalled that the car parked in front of the shop. He testified seeing the victim walk into the shop. Zackery testified that the victim's two passengers did not get out of the car at that time. Next, he observed Little Arnold drive the victim's vehicle to the rear of the building. Zackery remembered seeing Little Arnold and the two passengers get out of the car and walk along the side of the building to the front. He then observed "one of the guys that came with" the victim run from around the building with what appeared to be a gun in his hand. He then observed the victim get into the car and sit in the passenger's seat. He saw appellant get into the car and sit behind the victim in the back seat next to the victim's friend who was already in the

car. He also recalled seeing Little Arnold behind the steering wheel. As the car drove off, Zackery described the guy seated behind the driver as "like laying, like getting down, you know, like in that manner." The car left and approximately 30 minutes later appellant and Little Arnold returned in another car driven by a woman. Evelyn Whitley testified that on October 26 she drove appellant and Little Arnold to the shop.

Mack Simpson testified that he was arrested on October 29 by Officer Ancira and that he told Ancira he knew who murdered the victim. He testified that appellant personally told him about the murder. Mack recalled that on October 26 he ran into Little Arnold and appellant. Mack testified that appellant had a red and white bag with a pound and a half of marijuana in it. Mack asked appellant where he got the marijuana and appellant told him that he got it "from [the victim's] bitch ass." Mack testified in detail to the events surrounding the victim's murder as related to him by appellant.

## SUFFICIENCY OF THE EVIDENCE

### Legal Sufficiency—Guilt/Innocence Phase

■ In appellant's first point of error he claims the evidence is legally insufficient to support the aggravating elements that elevate the offense from murder to capital murder. A one-count indictment charged appellant with capital murder in two separate paragraphs each charging a different theory of capital murder. Paragraph A alleged appellant intentionally and knowingly caused the death of the victim by "shooting [the victim] with a deadly weapon, namely: a firearm" while appellant was in the course of committing and attempting to commit the offense of robbery of the victim. Paragraph B alleged appellant intentionally and knowingly caused the death of the victim by "shooting [the victim] with a deadly weapon, namely: a firearm" while appellant was in the course of committing and attempting to commit the offense of kidnapping the victim. Appel-

lant claims the evidence is insufficient to support a finding of either a robbery or a kidnapping of the victim as "the underlying offenses" to capital murder.

■ In reviewing a challenge to the legal sufficiency of the evidence to support a conviction, we view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Mosley v. State*, 983 S.W.2d 249, 254 (Tex.Cr.App. 1998); *Whitaker v. State*, 977 S.W.2d 595 (Tex.Cr.App.1998); *Mason v. State*, 905 S.W.2d 570, 574 (Tex.Cr.App.1995), *cert. denied*, 516 U.S. 1051, 116 S.Ct. 717, 133 L.Ed.2d 670 (1996); *Barnes v. State*, 876 S.W.2d 316, 321 (Tex.Cr.App.1994), *cert. denied*, 513 U.S. 861, 115 S.Ct. 174, 130 L.Ed.2d 110 (1994). When a jury returns a general guilty verdict on an indictment charging alternative theories of committing the same offense, the verdict stands if the evidence supports any of the theories charged. See *Kitchens v. State*, 823 S.W.2d 256, 258–59 (Tex.Cr.App.1991), *cert. denied*, 504 U.S. 958, 112 S.Ct. 2309, 119 L.Ed.2d 230 (1992); *Aguirre v. State*, 732 S.W.2d 320, 326 (Tex.Cr.App.1987)(op. on reh'g).

Viewed in the light most favorable to the verdict, the evidence outlined above supports a finding that appellant killed the victim during a robbery and a kidnapping. A rational jury could have found beyond a reasonable doubt that appellant robbed and kidnapped the victim. We overrule point of error one.

### Factual Sufficiency—Guilt/Innocence Phase

■ Appellant's second point or error challenges the factual sufficiency of the evidence to support his conviction for capital murder. Appellant specifically contends that the testimony of Reginald Taylor and Demeture DeLane are not worthy

of belief. In deciding whether the evidence is factually sufficient to support the jury's guilty verdict, we view the evidence without the prism of "in the light most favorable to the prosecution" and set aside the verdict only if it is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Cr.App. 1996); see also *Santellan v. State,* 939 S.W.2d 155, 164 (Tex.Cr.App.1997); *Jones v. State,* 944 S.W.2d 642, 647 (Tex.Cr.App. 1996), *cert. denied,* —— U.S. ——, 118 S.Ct. 100, 139 L.Ed.2d 54 (1997). Based on the evidence outlined above, we are unable to conclude the verdict is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." Point of error two is overruled.

## Legal Sufficiency—Future Dangerousness Question

In point of error three, appellant contends that the evidence is legally insufficient to support the jury's answer to the future dangerousness punishment issue.[1] Appellant contends that the prosecution did not show a severe criminal history and that the nature and number of previous crimes were not severe.

■ We utilize the *Jackson* standard for reviewing the legal sufficiency of the evidence to support the future dangerousness punishment issue. We view the evidence in the light most favorable to the jury's verdict, and ask whether any rational trier of fact could have found beyond a reasonable doubt that there was a probability that appellant would commit further acts of violence that would constitute a continuing threat to society. *Jackson,* 99 S.Ct. at 2789; *Barnes v. State,* 876 S.W.2d 316, 322 (Tex.Cr.App.1994), *cert. denied,* 513 U.S. 861, 115 S.Ct. 174, 130 L.Ed.2d 110 (1994). The burden is on the State to prove the future dangerousness issue beyond a reasonable doubt. Article 37.0711, Section 3(c), V.A.C.C.P.

■■ The jury is permitted to consider many factors when determining whether the defendant will pose a continuing threat of violence to society. *Keeton v. State,* 724 S.W.2d 58, 61 (Tex.Cr.App.1987). Those factors include, but are not limited to: (1) the circumstances of the capital offense, including the defendant's state of mind and whether he or she was working alone or with other parties; (2) the calculated nature of the defendant's acts; (3) the forethought and deliberateness exhibited by the crime's execution; (4) the existence of a prior criminal record, and the severity of the prior crimes; (5) the defendant's age and personal circumstances at the time of the offense; (6) whether the defendant was acting under duress or the domination of another at the time of the commission of the offense; (7) psychiatric evidence; and (8) character evidence. *Id.* In its determination of the special issues, the jury is entitled to consider all the evidence presented at the guilt/innocence phase of the trial, in addition to the evidence presented at the punishment phase. *Banda v. State,* 890 S.W.2d 42, (Tex.Cr.App.1994), *cert. denied,* 515 U.S. 1105, 115 S.Ct. 2253, 132 L.Ed.2d 260 (1995); *Valdez v. State,* 776 S.W.2d 162, 166–67 (Tex.Cr.App.1989), *cert. denied,* 495 U.S. 963, 110 S.Ct. 2575, 109 L.Ed.2d 757 (1990).

■ The evidence presented during punishment showed that appellant had been arrested several times prior to the murder of the victim. Appellant was arrested in December 1990 on felony warrants for burglary of a vehicle and burglary of a habitation. Two years later, appellant was arrested for unlawfully carrying a weapon and possession of marijuana. Later that same year, appellant

---

1. Texas Code of Criminal Procedure Article 37.071, Section 2(b)(1) provides:
   "On conclusion of the presentation of the evidence, the court shall submit the following issues to the jury:

   (1) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society."

was involved in a drive-by shooting. The State presented evidence showing appellant committed assault and battery during various acts of violence involving several victims prior to the murder. Furthermore, punishment evidence showed appellant while in jail physically and verbally assaulted fellow inmates and prison officials.

Considering the evidence presented at guilt/innocence and punishment, we conclude there was sufficient evidence to support the jury's affirmative finding that there was a probability appellant would be a continuing threat to society. Appellant's point of error three is overruled.

### Factual Sufficiency—Future Dangerousness Question

■ Appellant's fourth point of error claims the evidence is factually insufficient to support the jury's affirmative answer to the future dangerousness punishment issue. We do not review the factual sufficiency of the evidence to support the jury's answer to this special issue. See *McGinn v. State*, 961 S.W.2d 161 (Tex.Cr.App. 1998). Point of error four is overruled.

### Legal and Factual Sufficiency— Mitigation Question

■ In his fifth and sixth points of error, appellant contends that the evidence is legally and factually insufficient to support the jury's "no" answer to the mitigation evidence special issue. We do not review the sufficiency of the evidence to

support the jury's answer to this special issue. *Griffith v. State*, 983 S.W.2d 282 (Tex.Cr.App.1998); *McFarland v. State*, 928 S.W.2d 482, 499 (Tex.Cr.App.1996), *cert. denied,* 519 U.S. 1119, 117 S.Ct. 966, 136 L.Ed.2d 851 (1997); *Lawton v. State*, 913 S.W.2d 542, 557 (Tex.Cr.App.1995), *cert. denied,* 519 U.S. 826, 117 S.Ct. 88, 136 L.Ed.2d 44 (1996). Points of error five and six are overruled.

■ In his seventh point of error, appellant contends that the trial court erred in denying his writ of habeas corpus and not dismissing the indictment with prejudice for failure to comply with Texas Code of Criminal Procedure former Articles 28.061 and 32.01.[2] The Grand Jury indicted appellant for capital murder on January 24, 1996. Appellant filed his application for writ of habeas corpus on March 21, 1997. On that same day, the State filed an affidavit of "good cause" pursuant to Article 32.01 of the Texas Code of Criminal Procedure setting forth the grounds upon which the State justified the alleged delay. There was no hearing on the writ. The trial court denied appellant relief.

We have held that Article 32.01 has no application once an indictment is returned. *Tatum v. State*, 505 S.W.2d 548, 550 (Tex. Cr.App.1974). In this case, appellant waived his right to challenge the indictment since he filed his writ of habeas corpus almost a year and a half after the indictment was returned by the grand jury. Point of error seven is overruled.

---

**2.** Former Article 28.061 provided:
"If a motion to set aside an indictment, information, or complaint for failure to provide a speedy trial is sustained, the court shall discharge the defendant. A discharge under this article or Article 32.01 of this code is a bar to any further prosecution for the offense discharged and for any other offense arising out of the same transaction, other than an offense of a higher grade that the attorney representing the state and prosecuting the offense that was discharged does not have the primary duty to prosecute."

Former Article 32.01 provided:
"When a defendant has been detained in custody or held to bail for his appearance to answer any criminal accusation before the district court, the prosecution, unless otherwise ordered by the court, for good cause shown, supported by affidavit, shall be dismissed and the bail discharged, if indictment or information be not presented against such defendant at the next term of the court which is held after his commitment or admission to bail."

In appellant's eighth point of error he complains that the trial court erred in permitting the testimony of John Kipling during the punishment phase of trial.[3] Appellant contends that because Kipling is white and the appellant is black, that Kipling's testimony was elicited "for the sole purpose of appealing to the potential racial prejudices of the jury." Appellant however concedes that he made no objection at trial to any of the testimony of Kipling. Therefore, nothing is preserved for review. See Texas Rule of Appellate Procedure 33.1(a)(1). Point of error eight is therefore overruled.

In point of error nine appellant asserts that the trial court erred in failing to grant his request for a mistrial on the grounds that a juror became disabled during trial. The jury convicted appellant of capital murder on April 21, 1997. The following morning, the day scheduled to begin punishment, a juror was arrested for entering the courthouse with a handgun. Appellant moved for a mistrial. The trial judge however denied the motion. Appellant then requested that the trial court remove the juror on the grounds that he was disabled. The trial court allowed the juror to remain.

The language of Article 36.29 of the Texas Code of Criminal Procedure and the cases applying it make clear that the Legislature's intent was to limit the Article's application to those cases where the juror was physically or mentally impaired in some way which hindered his ability to perform his duty as a juror. *Griffin v. State*, 486 S.W.2d 948, 951 (Tex.Cr.App. 1972) (intoxication); *Allen v. State*, 536 S.W.2d 364, 366–67 (Tex.Cr.App.1976)(influenza); *Johnson v. State*, 525 S.W.2d 170, 171–72 (Tex.Cr.App.1975)(automobile accident injury); *Maciel v. State*, 517 S.W.2d 789, 790 (Tex.Cr.App.1975)(high blood pressure requiring hospitalization). The determination as to whether a juror is disabled is within the discretion of the trial court. Absent an abuse of that discretion, no reversible error will be found.

In this case, the juror in question did not suffer from a physical illness, mental condition, or emotional state which affected his ability to perform the duties assigned to him as a juror. In fact, the trial court asked the juror whether "this experience you've had this morning in any way impedes your ability to be fair to both sides in the trial of the punishment?" To which the juror responded, "No, sir, it had nothing to do with the trial at all." This juror was not disabled as envisioned by Article 36.29. The trial court did not abuse its discretion in allowing this juror to sit during punishment. Therefore, appellant's ninth point of error is overruled.

In point of error ten, appellant complains that the trial court erred in allowing the admission of hearsay evidence from the witness Zackery Greenwood. Greenwood testified during guilt/innocence about what he observed at the auto shop the day the victim was murdered. He testified that he saw Demeture DeLane run from the building, then was asked by the prosecutor:

"*Prosecutor:* Okay. After that did anybody else come out of the area where the office was?

"*Greenwood:* It was a mechanic that had come around to the side who said that they were around jacking.

"*Defense:* Your Honor, I'm going to object to the hearsay the person may have said.

"*The Court:* I don't know if the jury did hear, but what the person said you will disregard it, if you did hear that."

The State unsuccessfully attempted to get in this testimony as an excited utterance exception to the hearsay rule. Tex. R.Evid. 803(2). The trial court sustained

---

3. During punishment phase, John Kipling testified for the State. Kipling testified to the fact that appellant had a negative influence on his daughter whom appellant had dated. He testified that his daughter's behavior became erratic and that she suffered academically in school.

appellant's hearsay objection. The State then offered the statement as a present sense impression exception to the hearsay rule. Tex.R.Evid. 803(1). The trial court allowed the testimony on this basis. The prosecutor then proceeded with the following:

> *"Prosecutor:* Let's back up one step. When you saw the mechanic coming out of the garage area, what do you know that mechanic's name to be?
>
> *"Greenwood:* Bubba.
>
> *"Prosecutor:* Now, when you saw Bubba, what did he say as he came out of the office area?
>
> *"Greenwood:* He said they were jacking [the victim].
>
> *"Prosecutor:* What does that mean to you?
>
> *"Greenwood:* Like robbing, basically robbing."

Appellant contends this statement was not a present sense impression and therefore the trial court erred in admitting it. Specifically, he argues there existed too much time between the robbery and what the mechanic said to Greenwood. Texas Rule of Evidence 803(1) states:

> "(1) Present Sense Impression. A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, *or immediately thereafter."* (Emphasis added.)

The present sense impression exception to the hearsay rule is based upon the underlying premise that the contemporaneity of the event and the declaration ensures reliability of the statement. The closer the declaration is to the event the less likely there will be a calculated misstatement. That notion holds true in this case.

■ The mechanic told Greenwood that the victim was being "jacked" soon after the mechanic exited the building. The time lapse between the declarant's perception of the event and his statement to Greenwood was minimal. We cannot say the trial court abused its discretion to admit the testimony under the present sense impression exception to the hearsay rule. Moreover, any error in admitting the evidence was harmless in light of other properly admitted evidence proving the same fact. Appellant's point of error ten is overruled.

In point of error eleven appellant claims the trial court erred in failing to supply the jury with adequate instructions regarding the special issues. Specifically, appellant contends the trial court failed to define "probability," "criminal acts of violence," "continuing threat to society" and "society." We have previously rejected these claims. See *Patrick v. State,* 906 S.W.2d 481, 494 (Tex.Cr.App.1995), *cert. denied,* 517 U.S. 1106, 116 S.Ct. 1323, 134 L.Ed.2d 475 (1996); *Burks v. State,* 876 S.W.2d 877, 910–11 (Tex.Cr.App.1994), *cert. denied,* 513 U.S. 1114, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995); *Boyd v. State,* 811 S.W.2d 105 (Tex.Cr.App.1991); *Camacho v. State,* 864 S.W.2d 524 (Tex.Cr.App.1993). Therefore, point of error eleven is overruled.

In his twelfth point of error appellant contends that Article 44.251(a) of the Texas Code of Criminal Procedure is facially unconstitutional under the Eighth and Fourteenth Amendments to the United States Constitution. This Court has decided this issue adversely to appellant's position. *Cockrell v. State,* 933 S.W.2d 73 (Tex.Cr.App.1996); *McFarland,* 928 S.W.2d at 520; *Lawton v. State,* 913 S.W.2d at 558. We overrule point of error twelve.

In his thirteenth point of error, appellant submits that the Due Process Clause of the Fourteenth Amendment to the United States Constitution requires this Court to engage in a proportionality review in death penalty cases. We have rejected this claim. See *Hughes v. State,* 897 S.W.2d 285, 294 (Tex.Cr.App.1994); *McFarland,* 928 S.W.2d at 497. Appellant's thirteenth point of error is overruled.

In point of error number fourteen, appellant argues that the capital sentencing statute's definition of "mitigating evidence" is unconstitutionally narrow. We have rejected this claim. See *Jones v. State*, 944 S.W.2d at 656; *Shannon v. State*, 942 S.W.2d 591 (Tex.Cr.App.1996); *Cockrell v. State*, 933 S.W.2d at 92–93. Appellant's fourteenth point of error is overruled.

In point of error fifteen, appellant submits that the Texas capital murder sentencing scheme is unconstitutional as violating the Eighth Amendment of the United States Constitution because it fails to place the burden of proof on the State regarding the mitigation special issue. We have rejected this claim. See *Cockrell*, 933 S.W.2d at 92–94; *McFarland*, 928 S.W.2d at 516–24; *Barnes*, 876 S.W.2d at 329–330. We overrule appellant's fifteenth point of error.

Point of error sixteen contends that the Texas capital sentencing statutes violate the Eighth and Fourteenth Amendments to the United States Constitution in that they fail to require that jurors be informed that a single holdout juror on any special issue would result in an automatic life sentence. Appellant argues that Article 37.071, Section 2(a), which prohibits informing jurors of the effects of their failure to agree on the special issues, is unconstitutional. This Court has addressed this issue several times, and has repeatedly held that there is no constitutional violation in not instructing jurors on the effects of their individual answers. *Shannon*, 942 S.W.2d at 600–601; *Lawton*, 913 S.W.2d at 559; *Emery v. State*, 881 S.W.2d 702, 711 (Tex.Cr.App.1994); *Draughon v. State*, 831 S.W.2d 331 (Tex.Cr.App.1992); *Davis v. State*, 782 S.W.2d 211 (Tex.Cr.App.1989), *cert. denied*, 495 U.S. 940, 110 S.Ct. 2193, 109 L.Ed.2d 520 (1990). Point of error sixteen is overruled.

In point of error seventeen, appellant contends that the Texas capital murder sentencing scheme is unconstitutional because it allows open-ended discretion that is prohibited by the Supreme Court's decision in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). We have held adversely to appellant's claim. *Pondexter v. State*, 942 S.W.2d 577, 586–87 (Tex.Cr.App.1996), *cert. denied*, —— U.S. ——, 118 S.Ct. 85, 139 L.Ed.2d 42 (1997); *Shannon*, 942 S.W.2d at 598. Point of error seventeen is overruled.

In point of error eighteen, appellant asserts that the death penalty, as it is presently administered in Texas, constitutes cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution. As best can be determined, appellant appears to make a "facial challenge" to the death penalty and asserts that a death penalty imposed on an accused under any punishment scheme is violative of the Eighth Amendment's prohibition against cruel and unusual punishment. We have previously decided against appellant on this issue. *McFarland*, 928 S.W.2d at 508. Point of error eighteen is overruled.

In point of error nineteen, appellant contends that the death penalty, as presently administered in Texas, is cruel and unusual punishment under the Texas Constitution. He asserts that it is "particularly noteworthy" that where the federal constitution proscribes "cruel *and* unusual" punishment, the Texas constitution proscribes "cruel *or* unusual" punishment. The noteworthiness of the distinction is not self-evident to us. Appellant offers no arguments or authority explaining why the difference is noteworthy; his briefing regarding this point is inadequate. To adequately brief a state constitutional issue appellant must proffer specific arguments and authorities supporting his contentions under the state constitution. Otherwise his contentions are inadequately briefed. *McFarland*, 928 S.W.2d at 521; *Narvaiz v. State*, 840 S.W.2d 415, 430 (Tex.Cr.App. 1992), *cert. denied*, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993); *Robinson v. State*, 851 S.W.2d 216, 222 n. 4 (Tex.Cr. App.1991), *cert. denied*, 512 U.S. 1246, 114 S.Ct. 2765, 129 L.Ed.2d 879 (1994); *More-*

*head v. State*, 807 S.W.2d 577, 579 n. 1 (Tex.Cr.App.1991), Tex.R.App.Proc 38.9 (former Tex.R.App.Proc. 74). Appellant's point of error nineteen is overruled.

■ In point of error twenty, appellant relies on various statistical studies to claim Texas death sentences are disproportionately imposed in a racially discriminatory manner in violation of the Eighth and Fourteenth Amendments to the Federal Constitution. We disagree that these statistical studies establish this claim. *See McCleskey v. Kemp*, 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987). This Court has previously held adversely to this claim. *Cockrell*, 933 S.W.2d at 94; *Robinson*, 851 S.W.2d at 232. Therefore, we overrule point of error twenty.

■ In points of error twenty-one and twenty-two, appellant contends that the trial court erred in overruling his challenges for cause of veniremembers Jeffery McCombs and Susan Ho. To preserve error from the erroneous denial of a defense challenge for cause, a defendant must show he asserted a clear and specific challenge for cause, he used a peremptory challenge on the complained-of veniremember, he exhausted all his peremptory challenges, and his request for additional peremptory challenges was denied. See *Green v. State*, 934 S.W.2d 92, 105 (Tex.Cr. App.1996), *cert. denied*, 520 U.S. 1200, 117 S.Ct. 1561, 137 L.Ed.2d 707 (1997). In this case, the record reflects appellant requested no additional peremptory strikes after he had exhausted his fifteen peremptory strikes. Therefore appellant has failed to preserve error. We overrule points of error twenty-one and twenty-two.

■ In point of error twenty-three and twenty-four, appellant complains that the trial court erred in granting the State's challenges for cause of veniremembers Jeffery Chandler and Marina Campos. We decide any error in the trial court's granting of the State's challenges for cause to Chandler and Campos was harmless. Appellant has not shown that any error in granting the State's challenge for cause to these veniremembers denied him a fair and impartial jury. See Jones, slip op. at 6–13 (erroneous excusal of veniremember requires reversal only if the record shows "the error deprived the defendant of a lawfully constituted jury"). Point of error twenty-three and twenty-four are overruled.

Finding no error, we affirm the judgment and sentence of the trial court.

MEYERS and JOHNSON, JJ., concur in the result.

MANSFIELD, J., concurred in point 4 and otherwise joined the opinion of the Court.

WOMACK, J., joined the opinion of the Court and delivered a concurring opinion, joined by PRICE, J.

WOMACK, J., filed a concurring opinion in which PRICE, J., joined.

I join the judgment of the Court and, except as to Points of Error Four through Seven, its opinion.

I continue to believe that we can and should review the evidence at the capital-sentencing proceeding for both "legal" and "factual" sufficiency, as the appellant requests in Points Four through Six.

As for Point Seven, I do not think we should reach the merits of the district court's ruling on a writ of habeas corpus in this appeal. Habeas corpus being a proceeding separate from the criminal prosecution, an appeal from the ruling should have been taken to the court of appeals.