

## Fourth Court of Appeals
### San Antonio, Texas

#### MEMORANDUM OPINION

No. 04-12-00494-CR

James Cody **SPARKS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 213th District Court, Tarrant County, Texas
Trial Court No. 1215251D
The Honorable Louis E. Sturns, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:       Catherine Stone, Chief Justice
               Sandee Bryan Marion, Justice
               Patricia O. Alvarez, Justice

Delivered and Filed:  October 9, 2013

AFFIRMED

A jury convicted James Cody Sparks, appellant, of murder. The jury sentenced him to life imprisonment and assessed a $10,000.00 fine. Appellant appeals his conviction, asserting the trial court erred in failing to grant his requests for a mistrial (1) after a juror was dismissed and the trial proceeded with only eleven jurors, (2) after a witness made remarks that were not relevant, and (3) after a witness gave a non-responsive answer. We affirm.

**JUROR DISMISSAL**

In his first issue, appellant contends the trial court erred in denying his request for a mistrial after the trial court determined a juror was disabled and dismissed him, proceeding with only eleven jurors. Specifically, his argument is that because the dismissed juror was not "disabled" as provided by law, the trial court did not have the authority to dismiss him and his dismissal was improper; therefore, a mistrial should have been granted.

Both the Texas Code of Criminal Procedure and the Texas Constitution provide the right to a jury of twelve persons in felony cases. TEX. CONST. art. 5, § 13; TEX. CODE CRIM. PROC. ANN. art. 36.29 (West 2006). "[H]owever, after the trial of any felony case begins and a juror . . . becomes disabled from sitting at any time before the charge of the court is read to the jury, the remainder of the jury shall have the power to render the verdict." TEX. CODE CRIM. PROC. art. 36.29(a). A juror is considered "disabled" when the juror is physically or mentally impaired in some way that hinders his ability to perform his duty as a juror. *Brooks v. State*, 990 S.W.2d 278, 286 (Tex. Crim. App. 1999). The determination of whether a juror is disabled is within the discretion of the trial court and no error will be found absent an abuse of that discretion. *Id*.

Here, the record reflects one of the jurors, Juror Hudson, approached the bailiff during the guilt/innocence phase of appellant's trial and informed him that he knew members of the family of the victim, Christy Jenkins. Outside the presence of the jury, the bailiff informed the trial court. The trial court then brought Juror Hudson in for questioning in the presence of the lawyers. Juror Hudson informed the trial court he had realized that day that he recognized members of the Jenkins family and he knew some of them. He stated his uncle had owned a nightclub all of his life and he "grew up in it as a kid" and he "grew up with those people [the Jenkins] as well." The trial court inquired as to whether that relationship with the Jenkins family would affect his ability to give a fair judgment and Juror Hudson responded that he did not think he could give a fair judgment

to appellant. After a continued discussion off the record, the trial court announced its ruling that Juror Hudson would be discharged "due to his statement to the Court that he is acquainted with the Jenkins family, and he could not be fair to the defendant in this case because of that acquaintance." Immediately after this announcement, a discussion followed:

> [State]: We have no objection to that.
> [Court]: Any objection from the Defense?
> [Appellant]: Can I make an observation on the record?
> [Court]: Go ahead.
> [Appellant]: As I told the Court off the record, I honestly do not know whether the law requires the Court to get assent or consent of the Defense to proceed with 11. I am informed by the State that the case of Hill versus State . . . stands for the proposition that the Court is required to go forward in this sort of situation with 11 and that the Defense has no role in that decision. And if that is, in fact, the law, then we take no role in the position.
> However, my client has informed me that we would request that the Court pick a different panel and have 12 jurors because he feels that it is important that there be 12 people rather than 11 deciding his guilt or innocence, and therefore, I wanted to have the record reflect my position.

The trial court then announced, "I think I am compelled to discharge him. But I'm not going to declare a mistrial and grant — and pick a jury." Appellant's trial counsel agreed with the trial court's dismissal of Juror Hudson stating, "And actually, Judge, I do want the record to reflect that I agree with the Court's decision that the juror is unable to be salvaged given what he said."

We conclude appellant's first issue is waived. Appellant's trial counsel expressly agreed with the trial court that Juror Hudson should be dismissed; he cannot now contend on appeal the dismissal was improper such that a mistrial should have been granted. *See Mercado v. State*, 718 S.W.2d 291, 296 (Tex. Crim. App. 1986) (concluding appellate court correctly concluded issue was waived and stating, "appellant did not just fail to object but rather expressly acquiesced in the procedure used. We believe that he should not now be heard to complain . . . ."). Because defense counsel expressly acquiesced in discharging Juror Hudson and Code of Criminal Procedure article

36.29(a) allows a verdict to be rendered by the remaining jurors, we overrule appellant's first issue on appeal.

## PREJUDICIAL TESTIMONY

In his next two issues, appellant asserts the trial court erred in failing to grant a mistrial on two separate occasions after two of the State's witnesses made statements that were prejudicial to him.

Appellant's first request for a mistrial due to improper testimony occurred when Travis Dehorney, an acquaintance of appellant, testified for the State. When asked about his relationship with appellant, Dehorney stated, "We would see each other. We met through a friend, Charles Hopkins, and we'd get high together. We'd drink together." Appellant's trial counsel objected, asserting Dehorney's statements were prejudicial and non-responsive. The trial court sustained the objection and instructed the members of the jury to disregard the statements. Appellant's trial counsel requested a mistrial, which the trial court denied.

Appellant's second request for a mistrial due to improper testimony occurred when R.V. Kerr, the victim's uncle, testified for the State. Kerr testified he and the victim's brother, Michael, went over to appellant's house the night of Christy's murder after receiving a phone call about the incident. Kerr found Christy on the ground outside the house bleeding from a cut to her neck. Kerr and Michael went into the house looking for appellant but did not find him. Kerr testified he found a sack with bloody clothes in it outside appellant's house next to a brush pile. Kerr was asked what he did with the items:

Q:      And why did you pick up these — or what did you do with those items?
A:      I — I — I took pictures of them, and that was — it looked like his pants.
Q:      And what did you notice about the pants that were in the bag?
A:      They were just — it was rolled up in a sack, and it was just real bloody all down the legs of them.
Q:      So you took pictures of it. Did you do anything else with it?
A:      I took it to the detective.

Q:      And do you remember the detective's name that you took it to?
A:      Ms. Waters.
Q;      And at the time that you took this to her, did you leave it with her, or did you take it back with you?
A:      No.  She — she wanted to dispose of it.  She said that she didn't need it, that he had confessed to doing it.

Appellant's trial counsel objected and requested a mistrial, asserting the statement that appellant had confessed to the murder was so prejudicial that it could not be cured with an instruction.  A discussion was held off the record, and the trial court then instructed the jury to disregard the statement and denied appellant's request for a mistrial.

We review a trial court's ruling on a motion for mistrial under an abuse of discretion standard.  *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000).  We must uphold the trial court's ruling on a motion for mistrial if it was within the zone of reasonable disagreement.  *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007).  A mistrial is required because of improper testimony only when it is "clearly prejudicial to the defendant and is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors."  *Russeau v. State*, 171 S.W.3d 871, 885 (Tex. Crim. App. 2005).  "Ordinarily, a prompt instruction to disregard will cure error associated with an improper question and answer . . . ."  *Ovalle*, 13 S.W.3d at 783.  "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required."  *Archie*, 221 S.W.3d at 699.

## A.      Dehorney's testimony

We first analyze whether the trial court erred in denying appellant's motion for a mistrial after Dehorney's statement that he and appellant used to drink and get high together.

Appellant was on trial for murder.  The offense with which he was charged was not related to drugs or alcohol.  We do not believe a comment that appellant used drugs to be of the "extreme circumstances" where prejudice is so severe it is incurable by an instruction to disregard the

testimony. The trial court properly instructed the jury to disregard the testimony and as a reviewing court, we presume the jury followed such instructions. *See Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998). Accordingly, we conclude there was no error as the trial court did not abuse its discretion in denying appellant's motion for a mistrial in this circumstance.

**B.       Kerr's testimony**

Next, we analyze whether the trial court erred in denying appellant's motion for a mistrial after Kerr's testimony that the detective told him she did not need the sack of bloody clothes because appellant had already confessed to the murder of Christy.

The murder of Christy is the ultimate fact the State sought to prove. Therefore, we will assume Kerr's testimony that the detective informed him appellant had confessed to the murder is the type of evidence that is "clearly prejudicial" to appellant and "of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors" such that a mistrial was required. *See Russeau*, 171 S.W.3d at 885. However, even if there was error we must still review the record for harm. *See Ovalle*, 13 S.W.3d at 783–85 (conducting a harm analysis of appellant's contention the trial court erred in denying his motion for mistrial after improper impeachment and stating, "circumstances support the conclusion that the improper impeachment [the subject of motion for mistrial] was harmless").

Here, prior to Kerr's testimony, appellant's neighbor, Taryn Strange, testified she was working in her yard when she saw Christy come stumbling out of appellant's house and heard her yell for help. Strange testified that she approached Christy and Christy collapsed in her lap and at that point Strange noticed her stab wounds. Strange testified Christy told her appellant was the person who had stabbed her multiple times. Strange testified:

> A:       . . . . The cut on her arm at first is what I noticed, and I asked her who did
> that to her. And she said, "Cody." And then I said, "Well, how many" — "how

many more are there?" You know, I was trying to — and she said, "They're all over."

Strange's testimony was entered without objection.

Additionally, after Kerr's testimony that the detective told him appellant had confessed to the crime, appellant's sister, Lisa Sparks, testified appellant told her he had killed Christy:

> Q:   Now, when — well, tell me about that phone call you received at 8:57.
> A:   He called — I answered, and he was, like, "You need to get to my house now.  You need to get to my house now."  I said, "No.  Why?"  He's, like, "Just get to my house" and hung up the phone.
> Q:   Okay.  Now, after he hung up the phone, what did you do at that point?
> A:   I called right back.
> Q:   And did you get him?
> A:   Yes.
> Q:   Okay.  And what happened when you called back?
> A:   I said, "What's going on?  Just tell me what's going on."  And he said, "I killed Christy" and hung up.  And I could not get ahold of him the rest of the night.

Lisa's testimony was also entered without objection.

We conclude any error in the jury hearing Kerr's testimony that the detective told him appellant had confessed to the murder was not harmful error.  The jury also heard the properly admitted testimony of Lisa Sparks that appellant confessed to her he had murdered Christy.  *See Hudson v. State*, 675 S.W.2d 507, 511 (Tex. Crim. App. 1984) (concluding appellant could not complain of failure to grant mistrial after improper question when same evidence came in later without objection and stating, "it is well settled that an error in admission of evidence is cured where the same evidence comes in elsewhere without objection").  In addition, the jury heard Strange's properly admitted testimony that as Christy was dying she told her appellant was the one who had stabbed her on the night of her murder.  Based on the foregoing, we conclude any error resulting from Kerr's testimony did not harm appellant.

## CONCLUSION

We overrule appellant's issues on appeal. The trial court's judgment is affirmed.

Sandee Bryan Marion, Justice

Do not publish