**Opinion issued December 29, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00954-CR

———————————

**RALPH GARCIA, JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 405th District Court**
**Galveston County, Texas**
**Trial Court Case No. 12CR2430**

---

## MEMORANDUM OPINION

A jury convicted appellant Ralph Garcia, Jr. of murder and the court assessed his punishment at twenty-eight years' confinement in TDCJ. In a single issue, appellant argues that the trial court abused its discretion when it admitted a statement that appellant's ex-girlfriend made to law enforcement. We affirm.

## Background

The complainant, Maxie Flowers, was shot and killed as he was riding his bicycle down a residential street in Galveston on October 13, 2011.

Appellant's ex-girlfriend, Sarah Alvarez, was the first witness called to testify at appellant's trial in 2014. Alvarez initially denied having a clear recollection of the night that Flowers was killed. She testified that she was under the influence of drugs and alcohol that night and that the events of that evening were a "blur." Although she initially admitted to being present when Flowers was shot, Alvarez testified moments later that she and appellant were at the movies when the offense occurred, and that the only thing she remembered was "waking up the next morning" at appellant's parents' house "and seeing cops down the street around a body."

Alvarez acknowledged that she had previously given two statements to the police about the shooting, one in March and one in September 2012, but she claimed that she had been drinking heavily and taking Xanax during that period of time and she did not recall making those statements.

On further direct examination by the State, Alvarez testified that she had recently watched her videotaped statements to police and acknowledged that, in that in her second statement in September, she told the police that she and appellant walked to a house down the street to buy marijuana the night Flowers was shot, but returned to appellant's parents' house empty-handed. According to Alvarez, she also

told police in her September statement that appellant was angry because Flowers—"the guy on the bike"—had said something to Alvarez while they were trying to buy drugs and then he followed the couple back to appellant's parents' house. Alvarez also admitted to telling the police that she was in her mother's truck with appellant when appellant shot Flowers two or three times. Alvarez claimed that she had no independent recollection of these events and that she was only testifying based on her review of her prior statement.

Alvarez, who was wearing a county jumpsuit during trial, admitted to the jury that she did not want to testify and that she had been arrested after she failed to comply with the trial subpoena. She also admitted to telling the prosecutor that she did not want to testify at appellant's trial because she was afraid of retaliation.

After cross-examination, Alvarez was allowed to re-review her video statements. On redirect examination, Alvarez testified that her review of those conflicting statements refreshed her memory about the events surrounding the murder. Alvarez told the jury that she had lied in her first statement when she denied any knowledge of the shooting, and that her second statement, in which she admitted to be being present when the offense occurred, was the truth.

Alvarez further testified on redirect that when she and appellant were at the "weed house," Flowers remarked to appellant how pretty Alvarez was and then Flowers followed them back to appellant's parents' home and refused to leave.

3

According to Alvarez, she and appellant went into appellant's bedroom where appellant retrieved a shotgun from underneath his mattress. Appellant told Alvarez that God put him on this Earth "to do his dirty work." Alvarez and appellant then drove down the street in Alvarez's mother's truck to where Flowers was riding his bike. According to Alvarez, appellant stopped the truck, took the shotgun from his lap, pointed it out the partially opened window and shot Flowers twice before they returned to appellant's house. Alvarez testified that she could "remember [the shooting] like it was yesterday." Alvarez also testified that she had tried to talk to Officer Clemente Garcia about the incident on September 3, 2012, but that she jumped out of his patrol car and ran off after he told her they were being recorded.

Officer Garcia took the witness stand and testified that he is appellant's cousin and that he met Alvarez when she and appellant were dating. Garcia stated that he responded to a disturbance call on September 3, 2012, and when he arrived he found Alvarez at the scene. According to Garcia, Alvarez was crying, very upset, and she appeared to be under the influence. Garcia testified that he escorted Alvarez back to his patrol car and that he intended to take her to her mother's home, where she would be safe, but Alvarez jumped out of the car while en route. Garcia also testified that Alvarez indicated to him that she was a witness to Flowers's murder and that she was with appellant the night of the shooting. The State played a nine-second video clip of a statement Alvarez made to Garcia while she was sitting in his patrol car. In

4

that clip, Alvarez, who is sobbing, tells Garcia: "I am the key to the whole thing because I was there with [appellant]. I could . . . I could be charged with murder, too." The court admitted the statement under the statement-against-interest exception to the hearsay rule.

The record reflects that no physical evidence linking appellant to the scene was admitted into evidence at trial.[1] The shotgun that was used to shoot Flowers was never recovered, and Alvarez's mother's truck was never searched for evidence. Although other witnesses testified at trial, Alvarez was the only witness who identified appellant as the shooter.

## Admission of Alvarez's Statement was Harmless Error

Appellant argues that the trial court abused its discretion when it admitted Alvarez's statement to Officer Garcia into evidence as a statement against penal interest because the statement did not expose Alvarez to criminal liability and the statement lacked sufficient corroborating circumstances. Appellant further contends that he was harmed by the admission of this evidence because Alvarez was the key witness in the case, inconsistencies in her testimony and statements to police placed her credibility at issue, and the inadmissible statement was used to bolster her credibility. Appellant further argues that, given the lack of any other significant

---

[1] The police recovered two red shotgun shell casings from the scene and found green shotgun shells in appellant's bedroom.

evidence implicating him in Flowers's murder, the State's emphasis on Alvarez's statement during its closing argument demonstrates that the admission of this statement had a substantial influence on the outcome of the trial.

## A.    Standard of Review

We review a trial court's decision on the admissibility of evidence for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). "The erroneous admission of a hearsay statement constitutes non-constitutional error that is subject to a harm analysis." *Coleman v. State*, 428 S.W.3d 151, 162 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). "We do not overturn a conviction if, after examining the record as a whole, we have fair assurance that the error did not influence the verdict or had but a slight effect." *Id.* An erroneous admission of evidence does not constitute reversible error if the same or similar evidence is admitted without objection at another point in the trial. *See Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999).

## B.    Analysis

Even if Alvarez's statement was inadmissible hearsay, the admission of the statement was nevertheless harmless. Alvarez's statement did not reveal any evidence that was not already before the jury. Alvarez had already testified, without objection, that she was in the truck with appellant when appellant shot Flowers, and that appellant shot Flowers, in part, because Flowers had made a comment about

6

Alvarez to appellant. Officer Garcia also testified that Alvarez indicated to him that she was an eyewitness to the shooting. Therefore, Alvarez's statement to Garcia is cumulative of Alvarez's and Garcia's testimony and any error in the admission of the statement was harmless. *See Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003) ("An error [if any] in the admission of evidence is cured where the same evidence comes in elsewhere without objection."); *Brooks*, 990 S.W.2d at 287 (holding that any error in admission of hearsay testimony was harmless in light of other properly admitted evidence proving same fact).

After examining the record as a whole, we have fair assurance that admission of Alvarez's statement did not influence the verdict or had but a slight effect. *See Coleman*, 428 S.W.3d at 162.

We overrule appellant's sole issue.

## Conclusion

We affirm the trial court's judgment.


Russell Lloyd
Justice

Panel consists of Justices Higley, Huddle, and Lloyd.
Do not publish.   TEX. R. APP. P. 47.2(b).

7