**Affirmed and Memorandum Opinion filed January 31, 2023.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-21-00671-CR

_____

**JOSEPH PICKRON, JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 337th District Court
Harris County, Texas
Trial Court Cause No. 1563397**

## MEMORANDUM OPINION

In this appeal from a conviction for aggravated robbery, the sole question presented is whether the trial court reversibly erred when it admitted the hearsay statements of a non-testifying bystander. Our answer is "no."

### BACKGROUND

This case arises out of the taking of a vehicle during an armed robbery.

The complainant, who was the owner of the vehicle, was unloading groceries at her apartment complex when she noticed two black men loitering in the parking lot. She believed that the men's behavior was suspicious because a hurricane was soon to make landfall, and no other people were outside.

The two men approached the complainant as she was returning to her apartment. One of the men pointed a firearm at the complainant's head and demanded her keys. When she refused to surrender her keys, the man hit the complainant in the head with the firearm, causing her to fall down. Both men then began to kick and beat the complainant until she released the keys from her hand. Once they had the keys, the men ran away and stole the complainant's vehicle.

The complainant called police and gave a general description of the two men. The complainant said that the man with the firearm was young, around five feet ten inches tall, and that he had a large forehead. She also said that his firearm was a silver revolver with a short barrel.

Five days after the robbery, a patrol officer found the complainant's vehicle abandoned in a residential street. The vehicle had a blown-out tire and its passenger door was wide open. When the officer discovered that the vehicle had been reported as stolen, she arranged for it to be towed away. In preparation for the towing, the officer conducted an inventory search of the vehicle.

During the inventory search, a bystander alerted the officer that a nearby group of individuals had an unspecified involvement with the vehicle. The group consisted of two men and two women, and they were all within the officer's line of sight.

The officer and her partner detained the group. One of the men tried to run away, but he was caught. The other man in the group was appellant. He did not try

to run away, but he was observed tugging at his right pocket. A pat down search revealed that he was in possession of a silver revolver with a short barrel.

Appellant was taken into custody and his picture was placed into a six-person photo array, which was submitted to the complainant. From that photo array, the complainant positively identified appellant as the man who had attacked her with the revolver.

Appellant was then charged with aggravated robbery. He pleaded not guilty to that charge, and his case proceeded to a trial by jury.

During the trial, the prosecution relied on the direct testimony of the complainant, who identified appellant in court and said that she was 100% confident that appellant was the man who had robbed her. The defense did not contest that the complainant had been robbed, but the defense disputed whether appellant was the person who had committed the robbery. The defense noted that there was no forensic evidence connecting appellant to the robbery. The defense also challenged the complainant's reliability, noting among other points that the complainant had failed to mention to law enforcement that her attacker had a face tattoo and facial hair, as appellant did. The defense also argued that the photo array was unfairly suggestive.

The jury rejected the defense's arguments, convicted appellant as charged, and assessed his punishment at seventy years' imprisonment, plus a fine. The trial court entered a judgment based on the jury's verdict, and appellant now appeals from that judgment.

## HEARSAY

The bystander who identified appellant for having an unspecified involvement with the vehicle did not testify during the trial. Nevertheless, the prosecution sought

to admit the bystander's statements by using the officer who interacted with the bystander as the sponsoring witness.

Before the bystander's statements were elicited from the officer, the prosecution approached the bench and asserted that the predicate had been laid under Rule 803(1) of the Texas Rules of Evidence, which provides the hearsay exception for statements made under a present sense impression. The defense objected that the predicate had not been laid, and the trial court retired the jury for a hearing conducted outside of its presence.

During the hearing, the officer testified that she was flagged down by the bystander as she was processing the vehicle in preparation for it to be towed. The bystander told the officer that she had seen seven individuals around the vehicle, but the bystander did not specify how recently she had seen them. The bystander then alerted the officer that the individuals were currently walking towards the vehicle, not away from it; that they were about a hundred feet away; and that their group consisted of just four individuals, not the seven that had previously been reported.

The defense argued that the bystander's statements were not admissible under Rule 803(1) insofar as the statements described an event in the past. The defense also suggested that the prosecution could simply elicit testimony that appellant was found in the vicinity of the stolen vehicle, without the need for any hearsay statements.

The prosecution countered that Rule 803(1) permits a declarant's statements to be admitted if the declarant was describing an event immediately after the declarant perceived it. And the prosecution argued that an inference could be made that the bystander made her statements to the officer immediately after she saw the individuals because the individuals were still within the officer's line of sight at the time of the statements.

The trial court found "that there was little opportunity for this declarant to make a calculated misstatement of the event that [she] witnessed and that the declarant made the statement immediately after witnessing the event, as evidenced by the proffer of [the officer's] testimony that the people in question were still within eyesight." Based on that finding, the trial court overruled the defense's objection. Appellant now challenges that ruling.

For the sake of argument only, we will assume without deciding that the trial court erred by admitting the hearsay statements and proceed to a harm analysis under the standard for nonconstitutional error. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998) (the erroneous admission of hearsay is reviewed for harm under the standard for nonconstitutional error).

Nonconstitutional error must be disregarded unless it affects a defendant's substantial rights. *See* Tex. R. App. P. 44.2(b). An error affects a defendant's substantial rights when the error has a substantial and injurious effect or influence on the jury's verdict. *See King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). If we have a fair assurance from an examination of the record as a whole that the error did not influence the verdict, or had only a slight effect, then we must conclude that the error is harmless. *See Stredic v. State*, — S.W.3d —, 2022 WL 1499518, at *6 (Tex. Crim. App. 2022).

When making our assessment of harm, we consider various factors, including: (1) the character of the alleged error and how it might be considered in connection with other evidence; (2) the nature of the evidence supporting the verdict; (3) the existence and degree of additional evidence indicating guilt; and (4) whether the prosecution emphasized the complained of error. *See Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018).

5

***Character of the Alleged Error.*** When the jury returned to the courtroom, the prosecution questioned the officer about the bystander's statements in the following brief exchange:

> Q.     How close was [the bystander] to [the complainant's vehicle]?
>
> A.     She was right next to it.
>
> Q.     Okay. When you had an opportunity to speak with that witness, did she say anything to you that was useful in your investigation?
>
> A.     Yes.
>
> Q.     What did she say to you?
>
> A.     She said the individuals involved with that car were walking down the street, and she warned us that one of them was possibly armed.
>
> Q.     Okay. And did she say anything about seeing these individuals in the vehicle?
>
> A.     Yes.
>
> Q.     What did she say about that?
>
> A.     I don't recall.
>
> Q.     Do you remember noting in your offense report what she said about seeing those individuals inside of that vehicle?
>
> A.     Say your question again.
>
> Q.     Sure. Did that witness tell you anything about those individuals being seen inside of the vehicle?
>
> A.     She stated the car was stolen. I don't recall if she saw them inside the vehicle.

This testimony was not especially compelling. The officer could not remember if the bystander ever stated that appellant (or any member of his group) had been seen inside of the vehicle. The officer mostly just established that the bystander saw appellant in the vicinity of the vehicle—which was testimony that the officer could have provided on her own, without any reliance on hearsay statements.

According to the officer, the bystander also stated that the vehicle was stolen. But the officer knew that ultimate fact from her own independent investigation of the vehicle, and on cross-examination, the officer further admitted that the bystander never established the basis for her statement that the vehicle had been stolen. The officer also admitted that the bystander never provided any specific details about the interaction that appellant and his group allegedly had with the vehicle. The officer could not even recall if the bystander had mentioned how long the vehicle had been abandoned in the street.

Altogether, the bystander's statements only provided weak circumstantial evidence of appellant's guilt.

***Other Evidence of Guilt.*** The record contained other evidence that more directly inculpated appellant in the offense.

The lead investigator on the case testified that he learned that appellant "was seen exiting the vehicle that was found belonging to" the complainant. The investigator did not establish the basis for that knowledge, but in any event, his testimony was similar to the bystander's statements, and his testimony was admitted without objection. The admission of such testimony tends to render harmless any erroneous admission of the bystander's statements. *See Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999) ("Moreover, any error in admitting the evidence was harmless in light of other properly admitted evidence proving the same fact.").

In addition to the investigator's testimony, the complainant provided direct evidence of guilt when she identified appellant in open court and testified that she was 100% confident that he was the person who had robbed her.

The complainant's in-court identification was consistent with her initial physical description of her attacker, who she said was young, five feet ten inches

7

tall, and had a large forehead. The complainant had also mentioned that her attacker carried a silver revolver with a short barrel. Other evidence established that this type of firearm is not the most common type in circulation, and that appellant had one in his possession just five days after the robbery. When the complainant was shown appellant's revolver during the trial, she testified that it was the same type of firearm that had been used against her. All of these circumstances support a conclusion that harm did not result from any erroneous admission of the bystander's statements. *See Trevino v. State*, 218 S.W.3d 234, 240 (Tex. App.—Houston [14th Dist.] 2007, no pet.) ("In this case, all three complainants identified appellant as the man who exited the car and pointed the gun at them. Therefore, any error committed by the trial court in admitting Gonzalez's statement was harmless.").

The defense tried to cast doubt on the reliability of the complainant's identification by emphasizing that the complainant did not describe all of appellant's physical attributes to law enforcement, including appellant's face tattoo and facial hair. But the tattoo was not especially conspicuous. It was small, under appellant's left eye, and resembled a birth mark. And according to the complainant, the tattoo was not noticeable in the photo array.

As for the facial hair, the photo array appeared to show that appellant had a mustache and goatee. The complainant did not mention these characteristics to law enforcement, but she also testified that she never asserted that her attacker lacked such facial hair. The complainant also repeated that she was confident in her identification: "I'm not going to forget the face of the person who had a gun pointed at me."

The defense still questioned the complainant's reliability with other evidence showing that, in the days after the robbery but before appellant's arrest, the complainant had called the police about another suspicious individual. This

8

individual happened to be a neighbor, and the defense emphasized that he did not resemble appellant.

The complainant fully explained her actions at trial. She said that she never told the police that she suspected her neighbor was her attacker. Instead, she testified that she was on "extremely high alert" after the robbery, and she simply told the police that she was concerned that the neighbor had been loitering suspiciously in the same area as her attacker.

The defense also criticized the photo array as being unfairly suggestive because appellant's picture appeared to be the only one that depicted a fade haircut, which is one characteristic that the complainant had used in her description of her attacker. But at least three other participants in the photo array appeared to have relatively short haircuts, and an array is not considered unfairly suggestive simply because the participants are not identical. *See Luna v. State*, 268 S.W.3d 594, 607–08 (Tex. Crim. App. 2008).

*Closing Arguments.* The prosecution began by addressing the defensive arguments. The prosecution explained that the jury should not be manipulated by the complainant's failure to mention appellant's tattoo because the evidence established that the tattoo was small. The prosecution also explained that the defensive argument about the neighbor should be rejected because the complainant never said that the neighbor was her attacker, and because the police cleared the neighbor as a suspect.

The prosecution then shifted to the evidence against appellant, which the prosecution argued was so inculpatory that the police could not clear him. The prosecution emphasized that appellant matched the physical description given by the complainant—a young, black male, who was five feet ten inches tall, and with a large forehead. The prosecution also referred to the complainant's positive

identification of appellant, both in the photo array and in court. None of that evidence was hearsay or depended on statements from the bystander.

The prosecution also emphasized that appellant was found in possession of a silver revolver and in the vicinity of the complainant's vehicle. The sponsoring witness for this evidence was the patrol officer, who saw appellant for herself after she located the complainant's vehicle. The officer's testimony was properly admitted and not hearsay. Altogether, the prosecution asserted that the evidence of guilt was overwhelming, and that the jury could only find appellant not guilty if the jury believed that these circumstances were mere coincidences. In making these arguments, the prosecution never referred to the bystander.

Based on the record as a whole, we believe that the bystander's statements—which were less incriminating than other properly admitted evidence, and tended to prove the same fact as the unobjected-to evidence—had no influence on the jury's verdict, or at most, just a slight effect. We therefore conclude that any erroneous admission of those statements was harmless.

## CONCLUSION

The trial court's judgment is affirmed.


/s/    Tracy Christopher
Chief Justice


Panel consists of Chief Justice Christopher and Justices Bourliot and Wilson.
Do Not Publish — Tex. R. App. P. 47.2(b).