

# NUMBER 13-18-00480-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

HECTOR ARMANDO DELEON A/K/A
HECTOR ARMANDO DELEON JR., A/K/A
HECTOR A. DE LEON JR., A/K/A HECTOR
ARMANDO DE LEON, A/K/A HECTOR
DE LEON JR., A/K/A HECTOR DELEON,                    Appellant,

v.

THE STATE OF TEXAS,                                  Appellee.

On appeal from the 107th District Court
of Cameron County, Texas.

## MEMORANDUM OPINION

Before Chief Justice Contreras and Justices Longoria and Perkes
Memorandum Opinion by Chief Justice Contreras

Appellant Hector Armando DeLeon[1] was convicted of one count of sexual assault of a child (Count I) and three counts of indecency with a child by sexual contact (Counts II, III, and IV), all second-degree felonies. *See* TEX. PENAL CODE ANN. §§ 21.11(a)(1), 22.011(a)(2). He was sentenced to fifteen years' imprisonment for Count I and ten years' imprisonment for each of Counts II, III, and IV, and the trial court ordered all sentences to run consecutively. Appellant argues by three issues that the trial court erred in overruling his objections to certain testimony and exhibits on hearsay and Confrontation Clause grounds. We affirm.

## I. BACKGROUND

Count I alleged that appellant sexually assaulted V.G.,[2] a child under the age of seventeen, by intentionally or knowingly causing V.G.'s sexual organ to contact his sexual organ on or about August 15, 2016. *See id.* § 22.011(a)(2). Count II alleged that appellant, with the intent to arouse or gratify his sexual desire, touched V.G.'s breast on or about August 15, 2016. *See id.* § 21.11(a)(1). Count III alleged that appellant, with the intent to arouse or gratify his sexual desire, touched the breast of F.G., a child under the age of seventeen and V.G.'s younger sister, on or about May 27, 2017. *See id.* Count IV alleged that appellant, with the intent to arouse or gratify his sexual desire, touched the genitals of F.G. on or about May 27, 2017. *See id.*

At trial, V.G. testified that her parents split up when she was three or four years old, and her mother started a relationship with appellant a few years later. When V.G.

---

[1] Appellant's name is listed as "Hector Armando DeLeon a/k/a Hector Armando DeLeon Jr., a/k/a Hector A. De Leon Jr., a/k/a Hector Armando De Leon, a/k/a Hector De Leon Jr., a/k/a Hector DeLeon" in the final judgment.

[2] We refer to the complainants by their initials to protect their identities.

was ten years old, her house burned down and so she, her mother, and her three sisters moved in with appellant at his apartment in Brownsville.

V.G. testified that, in the early morning hours of August 14, 2016, when she was fourteen years old, the family was watching a movie in appellant's bedroom. Appellant was drinking. V.G.'s mother and sisters left the room, leaving V.G. alone with appellant; V.G. stated that her mother allowed this because she knew that V.G. "had sort of a close relationship to" appellant and "none of us really would think anything of it." V.G. stated that she laid on appellant's bed and appellant asked her not to leave. Appellant then started touching V.G.'s breast underneath her shirt. She started crying and asked him to stop but he did not. V.G. testified appellant then got on top of her, removed her shorts and underwear, and started touching and licking her "in between [her] legs." He then removed his own pants and "put his penis into [her] vagina." Subsequently, according to V.G., appellant took her left hand and made her touch his penis. According to V.G., appellant later called her on the phone and apologized, saying "he was in the moment" and "he thought it was just making love."

The first person V.G. told about the assault was her friend Tiffany, who was the same age as V.G. and lived in a nearby apartment. V.G. said she did not initially tell her mother because she was scared that appellant "would do something" to her or her mother.

V.G., her mother, and her sisters later moved out of appellant's residence. In May of 2017, V.G. came home to see her mother yelling at appellant over the phone. V.G.'s oldest and younger sisters were talking and the younger sister, F.G., was crying. As a result of what her oldest sister told her, V.G. "froze up and started crying" and told her oldest sister that "that had happened to me." V.G. testified: "I felt guilty for not telling my

3

mom what had happened, and if I just told her when it happened, it wouldn't be that, that wouldn't have happened to [F.G.]," who was twelve years old at the time. V.G. then told her mother about the assault that occurred in August of 2016. Her mother began crying and shaking and "just kept on telling us that she was sorry." V.G. stated that they did not call the police because they were scared of appellant.

In November of 2017, after V.G. saw a video on sexual assault in her health class at school, she told the health teacher about the August 2016 assault. The teacher advised her counselor and the counselor called the police. V.G. was examined at a hospital and later attended therapy.

F.G. testified that, in the summer when she was eleven or twelve years old, her family had moved out of appellant's apartment and they were living with her aunt. Appellant was at her aunt's house one morning, and after F.G.'s mother left, appellant asked F.G. to watch television with him. Appellant asked F.G. to "lay with him" on the couch; she said no and appellant "grabbed" her and "pushed [her] down with him." F.G. testified that appellant "pick[ed] up her shirt," put his hand under her bra, and touched her. Appellant apologized and claimed it was an accident, but he did it again "not even probably a minute later." He then asked her to rub his leg. F.G. initially said no but eventually agreed to rub his leg. She asked if she could go to her room but appellant said no. Appellant then "made [her]" touch his penis and told her to go faster. F.G. said she she was crying and looking away the entire time. She did not call out for help to her aunt because her aunt "is kind of really old" and "can't really hear." The next day, F.G. told her mother and oldest sister that appellant touched her. Later, she could hear appellant and her mother arguing. She did not want her mother to call the police because she was

4

"terrified" of appellant. After police were eventually contacted later that year, F.G. underwent a sexual assault examination and counseling. She agreed that, as part of the counseling, the therapist had her "tell everything" about the abuse to her mother.

Sonja Eddleman, a registered nurse and director of the Child to Adult Abuse Response Team at Valley Baptist Hospital in Harlingen, testified as an expert for the State. She stated she has conducted "[a] little over 10,000" sexual assault examinations in her twenty-four-year career, and she explained the process involved in such examinations. Eddleman testified that she reviewed medical records for F.G., including a report from a sexual assault examination performed by nurse Elizabeth Guzman. The prosecutor asked Eddleman to "read out the verbatim history that [F.G.] gave to the nurse," and Eddleman stated as follows:

> Yes, ma'am. She said, patient states, he was my Mom's ex-boyfriend, [appellant]. He touched my breast, and the patient indicated her breasts by pointing, under the clothes one time. I remember he asked me to rub his leg. He made me do it. It happened on a Saturday because my mom was coming back Sunday. She was at a kickball tournament with my other sisters in Corpus Christi that May. I didn't want to rub his leg. I had a feeling he was going to make me do something. I started rubbing his knee, then his thigh, then up to his part, his private part in the front, under his clothes. I was getting teary. I wanted to cry. Then he asked me if I wanted to go watch a show on TV. Then he told me that I didn't have to do it if I didn't want to. I told my sister, and she told my mom, end of quote.

Eddleman also noted that, according to Guzman's report, F.G. "was calm and cooperative, she had good eye contact, she was a good historian in providing the medical history. She had good verbal skills, and she denied any current suicidal ideations."

Eddleman also reviewed V.G.'s medical records, including a report from a sexual assault examination performed by Guzman. Again, the prosecutor asked Eddleman to "read the history that was collected verbatim" and Eddleman did so, as follows:

> [V.G.] stated, a man had sex with me. He was Mom's ex-boyfriend,

5

[appellant]. He is in his 40s. He put his penis inside my vagina, and she pointed to her female sexual organ. One time. He also touched my breasts under my clothes with his hands, one time. Last time was that day. It happened at night around 3:00 in the morning. At that time, my aunt was living with us . . . . My sisters and my mom were asleep, end of quote.

Referring to Guzman's report, Eddleman further stated that "[V.G.] was described as being calm, cooperative, she had good eye contact, she was a good historian, she had good verbal skills. She was tearful when she was relating or telling the history to the nurse examiner, and she denied current suicidal ideations."[3]

Joanna Frausto, a forensic interviewer at the Cameron County Children's Advocacy Center, interviewed both V.G. and F.G. Frausto testified that F.G. identified her abuser during her interview; however, when the State asked her whom F.G. identified, defense counsel objected, and the trial court sustained the objection. Frausto stated that she used anatomical diagrams to assist F.G. in clarifying where she was touched. The diagrams were entered into evidence as State's Exhibits 23 and 24. Exhibit 23 is a diagram of a girl's body with the left breast circled. When asked why that body part was circled, Frausto testified: "During the interview, [F.G.] had disclosed that [appellant] had touched her on her breast under her clothes." Similarly, when asked why the penis was circled in Exhibit 24, a diagram of a boy's body, Frausto explained: "During the interview, [F.G.] disclosed that [appellant] made her touch his penis." Defense counsel objected to Frausto's testimony regarding Exhibit 23 on hearsay grounds, and to her testimony regarding Exhibit 24 on speculation grounds; both objections were overruled.

The jury found appellant guilty of all four counts alleged in the indictment, and it

---

[3] Though Eddleman testified extensively from the reports prepared by Guzman following the examinations of V.G. and F.G., the reports themselves do not appear in the record.

6

assessed punishment as set forth above. This appeal followed.

## II. Discussion

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). A trial judge abuses its discretion if its decision falls outside the zone of reasonable disagreement. *Id.*

### A. Eddleman's Testimony

By his first issue, appellant contends that the trial court erred in overruling his hearsay and Confrontation Clause objections to Eddleman's testimony regarding Guzman's sexual assault examination reports.[4]

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. TEX. R. EVID. 801(d). Hearsay is generally inadmissible, but there are exceptions. *See* TEX. R. EVID. 803, 804. One such exception applies to any statement that: "(A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause." TEX. R. EVID. 803(4). Even when testimony is excepted from the hearsay rule under the Rules of Evidence,[5] it must also comply with the Confrontation Clause in order to be admissible. *See* U.S. CONST. amend VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."); *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008)

---

[4] At trial, defense counsel objected to Eddleman's testimony on hearsay and Confrontation Clause grounds during a hearing outside the presence of the jury. Therefore, the issue has been preserved for our review. *See* TEX. R. EVID. 103(b).

[5] Though appellant's first issue purports to challenge the trial court's ruling on his hearsay objection, his argument and authorities as to this issue pertain exclusively to the Confrontation Clause. Therefore, to the extent appellant contends Eddleman's testimony was inadmissible under the rules of evidence, the issue is waived as inadequately briefed. *See* TEX. R. APP. P. 38.1(i).

(noting that "[t]his bedrock procedural guarantee applies to both federal and state prosecutions"). The Confrontation Clause bars admission of any "testimonial" out-of-court statement unless the declarant is unavailable and the defendant had an opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 59 (2004). A statement is testimonial if "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006). Whether an out-of-court statement is testimonial is a question of law reviewed de novo. *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006).

Appellant argues that Eddleman's "entire relevant testimony concerning the facts of the case was a violation of the Confrontation Clause because she simply read from the report of the declarant," Guzman, who did not testify. We disagree. Here, Eddleman read from the reports prepared by Guzman, which in part transcribed the patient histories given by V.G. and F.G. Admission of the statements attributed to V.G. and F.G. did not violate appellant's Confrontation Clause rights because V.G. and F.G. testified and were subject to cross-examination at trial. *See Crawford*, 541 U.S. at 59; *De La Paz*, 273 S.W.3d at 680; *see also Oliva v. State*, No. 13-15-00609-CR, 2017 WL 2608280, at *7 (Tex. App.—Corpus Christi–Edinburg June 15, 2017, no pet.) (mem. op., not designated for publication) (finding no Confrontation Clause violation where Eddleman read a patient history set forth in a report prepared by a non-testifying nurse, noting that complainant was subject to cross-examination); *Segura v. State*, No. 05-15-00032-CR, 2015 WL 8273712, at *5 (Tex. App.—Dallas Dec. 8, 2015, no pet.) (mem. op., not designated for publication) (finding no Confrontation Clause violation because statements "provided to a nurse for the purpose of medical treatment, not to further a criminal prosecution" were

not testimonial, and in any event, complainant was subject to cross-examination).

Appellant notes correctly that, in addition to the patient histories given by V.G. and F.G., Eddleman's testimony also included Guzman's personal observations regarding the demeanor and appearance of the complainants during their examinations. Appellant cites *Bullcoming v. New Mexico*, in which the United States Supreme Court held that an expert's testimony regarding a blood-alcohol analysis report prepared by a different, non-testifying analyst was testimonial. 564 U.S. 647, 663–645 (2011). He also cites *Paredes v. State*, where the Texas Court of Criminal Appeals surveyed the state of the law regarding "surrogate" expert testimony, including *Bullcoming*, and explained:

> [S]everal general principles are clear, assuming a defendant was afforded no prior opportunity to cross-examine. The admission of a lab report created solely by a non-testifying analyst, without calling that analyst to sponsor it, violates the Confrontation Clause. Doing so deprives a defendant of his opportunity to cross-examine the non-testifying expert about the conclusions contained in the report and how the non-testifying expert arrived at those conclusions. Additionally, testimony from an expert explaining that non-testifying analyst's report does not provide an adequate substitute for cross-examination even if the testifying expert is generally familiar with how the relevant analysis is customarily performed. When the testifying expert has no personal knowledge of how the testing was conducted, a defendant still cannot adequately challenge through cross-examination the conclusion of that non-testifying analyst offered in that non-testifying analyst's report. For an expert's testimony based upon forensic analysis performed solely by a non-testifying analyst to be admissible, the testifying expert must testify about his or her own opinions and conclusions. While the testifying expert can rely upon information from a non-testifying analyst, the testifying expert cannot act as a surrogate to introduce that information.

462 S.W.3d 510, 517–18 (Tex. Crim. App. 2015). In *Paredes*, the testifying expert referred to results of DNA tests performed by non-testifying analysts; however, the case was distinguished from *Bullcoming* because "the testifying expert was more than a surrogate for a non-testifying analyst's report." *Id.* at 518. Instead, the testifying expert "performed the crucial analysis determining the DNA match and testified to her own

9

conclusions." *Id.* The same is not true in this case. Though she testified at length regarding sexual assault examination procedures in general, Eddleman did not perform any independent analysis regarding V.G. or F.G. To the extent her testimony was probative as to the specific facts of this case, that was entirely due to her relaying the patient histories and Guzman's personal observations. Accordingly—to the extent Eddleman testified as to Guzman's observations of the complainants' demeanor during their examinations—Eddleman was acting as a mere "surrogate" for Guzman. *See Bullcoming*, 564 U.S. at 661–62 (noting that "surrogate testimony" of this type does not pass constitutional muster because it "could not convey what [the non-testifying analyst] knew or observed about the events his certification concerned" nor could it "expose any lapses or lies on the [non-testifying] analyst's part").

Nevertheless, the United States Supreme Court has recognized that "medical reports created for treatment purposes" are not "testimonial" for Confrontation Clause purposes. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 312 n.2 (2009); *Berkley v. State*, 298 S.W.3d 712, 715 (Tex. App.—San Antonio 2009, pet. ref'd) (holding, where witness read from another nurse's report, including "some of the history and the examining nurse's observations of the complainant's general and emotional appearance," that the report was non-testimonial). *Paredes* did not involve statements given for medical treatment, and appellant cites no authority extending its rationale to such cases.

Here, there is no dispute that Guzman's observations of the complainants during their examinations were part of medical reports created primarily for the purpose of legitimate medical treatment. *See Berkley*, 298 S.W.3d at 715; *cf. Kou v. State*, 536 S.W.3d 535, 544 (Tex. App.—San Antonio 2017, pet. ref'd) (holding that the State failed

to show that the "primary purpose" for testing the complainant for herpes was for medical treatment because "the record does not show the lab test results were used for anything other than prosecution"; therefore, admission of the test results violated the Confrontation Clause).  Accordingly, admission of those observations through Eddleman did not offend the Confrontation Clause.  Appellant's first issue is overruled.

## B.  Frausto's Testimony and Exhibits

By his second issue, appellant argues that the trial court erred by overruling his objection, on Confrontation Clause grounds, to State's Exhibits 23 and 24.  By his third issue, he contends that the trial court erred by overruling his hearsay objection to Frausto's testimony regarding those exhibits.  Appellant argues on appeal that Frausto's testimony constituted "backdoor hearsay."  *See Schaffer v. State*, 777 S.W.2d 111, 114 (Tex. Crim. App. 1989) ("[W]here there is an inescapable conclusion that a piece of evidence is being offered to prove statements made outside the courtroom, a party may not circumvent the hearsay prohibition through artful questioning designed to elicit hearsay indirectly.").

At trial, when the State moved to enter Exhibits 23 and 24 into evidence, defense counsel objected as follows:

> I'm objecting to the drawings, Your Honor.  The two girls were actually here present, they could have tried to introduce them through them.  We don't really know that it's an accurate description.  The only people that know about these are the girls, and they have already been on the stand.  I don't think we can— . . . She did not create those documents.

The trial court overruled the objection and admitted the exhibits.  Because counsel did not object to the exhibits on Confrontation Clause grounds, appellant's second issue has not been preserved for our review.  *See* TEX. R. APP. P. 33.1(a)(1); *see also Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002) ("[T]he point of error on appeal must

11

comport with the objection made at trial."); *Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990) ("Even constitutional errors may be waived by failure to object at trial."). Moreover, though counsel objected to Frausto's testimony as to Exhibit 23 on hearsay grounds, he objected to Frausto's testimony as to Exhibit 24 only on speculation grounds. Thus, appellant's third issue has been preserved only as to Frausto's testimony regarding Exhibit 23. *See* TEX. R. APP. P. 33.1(a)(1); *see also Wilson*, 71 S.W.3d at 349.

When asked by the prosecutor why the breast was circled on Exhibit 23, Frausto testified it was because F.G. disclosed that this was the area of her body that appellant touched. The State contends that, even if the trial court erred in admitting this testimony, it is harmless error because the same facts were proven by other evidence. We agree. The improper admission of evidence does not constitute reversible error if other properly admitted testimony proves the same facts. *See Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999). Here, F.G. testified in detail and without objection as to the exact same behavior referenced in Frausto's testimony. Accordingly, any error in admitting Frausto's testimony would not be reversible. *See* TEX. R. APP. P. 44.2. Appellant's second and third issues are overruled.

## III. CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 5th
day of September, 2019.