

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00071-CR

_____

JOSE VALLE-FERNANDEZ, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 297th District Court
Tarrant County, Texas
Trial Court No. 1718742

---

Before Kerr, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

## I.  Introduction

Appellant Jose Valle-Fernandez appeals his convictions for continuous sexual abuse of a child for which he was sentenced to life without parole and two counts of indecency with a child by sexual contact for each of which he was sentenced to two years' confinement.  In two issues, Appellant contends that the trial court abused its discretion by determining that a juror was disabled, thereby continuing with only eleven jurors over his objections, and by refusing the defense's requests to explore the potential bias of another juror.  Because Appellant has failed to show an abuse of discretion as to either issue that he raises, we affirm.[1]

## II.  Disabled-Juror Determination and Decision to Proceed with Eleven Jurors

In his first issue, Appellant argues (1) that the trial court abused its discretion by finding Juror No. 61 disabled and by excusing him and (2) that the defense did not consent to proceeding with eleven jurors.  Because, as explained below, the record demonstrates that the trial court did not abuse its discretion by finding that a juror who was coughing excessively and grabbing his chest was disabled, it follows that under the disabled-juror statute it was proper for the trial court to continue the trial with eleven jurors.

---

[1]Because Appellant does not challenge the sufficiency of the evidence to support his convictions, we omit a factual background and instead summarize the relevant portions of the record under each of his issues.

## A. Standard of Review and Applicable Law

This court has previously set forth the law regarding the right to a twelve-person jury, the law that applies when determining whether a juror has become disabled, and the standard of review that we apply when reviewing a finding of juror disability:

> While the right to a twelve-person jury is not found in the United States Constitution, both the Texas constitution and the Texas Code of Criminal Procedure require a verdict rendered by twelve jurors in felony cases. Tex. Const. art. V, § 13; Tex. Code Crim. Proc. Ann. art. 36.29(a). However, under both the constitution and the statute, if a juror becomes "disabled"[2] from sitting, the judge may remove the juror and allow the trial to proceed with fewer than twelve jurors. Tex. Const. art. V, § 13; Tex. Code Crim. Proc. Ann. art. 36.29(a).
>
> "The determination as to whether a juror is disabled is within the discretion of the trial court. Absent an abuse of that discretion, no reversible error will be found." *Brooks v. State*, 990 S.W.2d 278, 286 (Tex. Crim. App. 1999). Our role in reviewing a finding of disability is not "to substitute [our] own judgment for that of the trial court[] but rather[] to assess whether, after viewing the evidence in the light most favorable to the trial court's ruling, the ruling was arbitrary or unreasonable." *Scales* . . . , 380 S.W.3d [at] 784 . . . . Thus, we will reverse a trial court's finding of disability only if it is outside the zone of reasonable disagreement. *Id.*

*Frazier v. State*, No. 02-21-00115-CR, 2022 WL 5240393, at *3–4 (Tex. App.—Fort Worth Oct. 6, 2022, pet. ref'd) (mem. op., not designated for publication). Moreover, if a juror is found to be disabled "from sitting at any time before the charge of the court is read to the jury," the defendant's consent is not necessary to proceed with

---

[2]To be "disabled" under Article 36.29(a), the juror must be physically, mentally, or emotionally impaired in such a way that would hinder or inhibit the juror's ability to serve. *Scales v. State*, 380 S.W.3d 780, 783 (Tex. Crim. App. 2012) (op. on reh'g).

3

eleven jurors. Tex. Code Crim. Proc. Ann. art. 36.29(a); *see Hill v. State*, 90 S.W.3d 308, 315 (Tex. Crim. App. 2002) (stating that when a juror becomes disabled, "'the remainder of the jury shall have the power to render the verdict' [and that t]here is no need to obtain anyone's consent in this instance").

## B.    What the Record Shows

Voir dire took place on January 22, 2024. Many potential jurors were excused for cause, leaving only one possible alternate juror. The trial court then gave each side a strike to use on the alternate juror (who had transportation issues) and noted that if the parties struck him, there would not be an alternate. The parties agreed to proceed without an alternate juror.

Two days later when the trial commenced, but before any testimony began, the trial court announced that Juror No. 61 was showing signs of illness:

THE COURT:  Okay. We have a problem.

Juror No. 61 . . . is coughing heavily. He's -- he was the one wearing a mask. He still has a mask. I have segregated him from the rest of the jury. He is grabbing his chest. He -- he appears to be sick.

While we haven't tested him for COVID, he said he would be willing to test for COVID. I don't want to test him unless we just have to. Y'all know the law. We can excuse him, but all 11 have to sign the verdict form.

So, State, what do you want to do?

4

The State responded that it "would be fine with excusing him." After defense counsel spoke with Appellant, Appellant indicated that he wanted "to go forward with 12 jurors, not 11."

The trial court stated, "Well, we got one that's sick. He can't continue, so the [c]ourt plans to excuse him and proceed with 11." Defense counsel responded, "[O]bviously, we would object to *that* just for the record," and the trial court overruled the ambiguous objection. [Emphasis added.] Defense counsel then "move[d] for the mistrial in the event the [c]ourt [wa]s excusing the 12th juror to -- to 11," and the trial court denied the motion for mistrial.

The trial court next brought in Juror No. 61 and put the following on the record:

> Okay. [Juror No. 61], you have been coughing excessively this morning, correct?
>
> JUROR: Yes, sir. Yes, sir.
>
> THE COURT: You got a mask on?
>
> JUROR: Yes.
>
> THE COURT: Are you sick?
>
> JUROR: I'm sick, sir.
>
> THE COURT: Okay. Are you sick to a degree that you cannot continue as a juror?
>
> JUROR: Yes.
>
> THE COURT: Because I'm planning to excuse -- you say "yes"?

5

All right.  Did you say "yes"?

JUROR:  Yes.

THE COURT:  Okay.  You're excused, okay?

JUROR:  Okay.

THE COURT:  Okay.  Take that down to jury dismissal[,] and you're done.

. . . .

And for the record, Juror No. 61 . . . is continuing to cough, and it's on a regular basis.  We've tried giving him water.  We've tried giving him HALLS throat lozenges.  Nothing was working.  He was continuing to cough.  And the [c]ourt's opinion, it would have been -- his cough and sickness would have been so completely disruptive to the trial that we could not have continued with him in the jury box.

And he was continuing to cough all the way down the hall, right, [bailiff]?

THE BAILIFF:  Yes, Judge.

THE COURT:  And it was a yucky kind of phlegmy cough, correct?

THE BAILIFF:  Yes, sir.

THE COURT:  Okay.  Court also witnessed him grabbing his chest and indicating that he just was shaking his head that he just couldn't continue.

So that's for the record.  I'm going to intend to bring the jury out.

The indictment was read, and the trial began.  When the jury was excused for a morning break, the trial court realized that it had not made a disabled-juror finding: "I neglected to make a finding under [Article] 36.29 [as] to the dismissed juror, No. 61

6

. . . . In addition to everything I have said, I also find that he was disabled and [that] his sickness would have kept him unable to serve as a juror." After the break but before the jury was brought in, the trial court asked if both sides were ready. Defense counsel lodged "the same objection" under Article 36.29 and stated that the defense was "not going to agree to go forward with 11 jurors" and was going to continue to object. The trial court implicitly overruled the objection and proceeded with the trial.

## C. Analysis

### 1. Disabled-Juror Finding

The State argues that Appellant failed to preserve his complaint regarding the trial court's finding that Juror No. 61 was disabled because Appellant did not specifically object to the trial court's finding. Thus, as a threshold matter, we must consider whether Appellant preserved this specific claim of error.

To preserve a complaint for appellate review, the record must show that a specific and timely objection was made to the trial court and that the court ruled on the objection. Tex. R. App. P. 33.1(a); *Lovill v. State*, 319 S.W.3d 687, 691 (Tex. Crim. App. 2009). "The complaining party must have informed the trial judge what was wanted and why the party was entitled to it." *Lovill*, 319 S.W.3d at 691.

After the trial court announced that it intended to excuse Juror No. 61 as disabled and to continue with eleven jurors, Appellant raised a bare objection that did not identify which part of the trial court's decision that he was objecting to (i.e., the disability finding, the decision to proceed with eleven jurors, or both) or on what

7

grounds: "[O]bviously, we would object to *that* just for the record[.]" [Emphasis added.] After the trial court overruled Appellant's ambiguous objection, he "move[d] for the mistrial in the event the [c]ourt [wa]s excusing the 12th juror to -- to 11," thus focusing on the decision to proceed with eleven jurors. And later when the trial court made a specific disabled-juror finding on the record, Appellant made no objection. After the parties returned from a break and the trial court asked whether both sides were ready, defense counsel lodged "the same objection" under Article 36.29 and stated that the defense was "not going to agree to go forward with 11 jurors" and was going to continue to object. Based on the objections that were raised, we hold that Appellant failed to specifically object to the trial court's finding that Juror No. 61 was disabled.

Because Appellant failed to specifically object to the juror-disability finding at trial, this issue does not appear to have been preserved for appellate review. *See Frazier*, 2022 WL 5240393, at *4; *cf. Starks v. State*, 252 S.W.3d 704, 707 (Tex. App.—Amarillo 2008, no pet.) (holding that appellant forfeited objection to ill juror's discharge by failing to specifically object on the record when the trial court announced the juror's discharge); *Hughes v. State*, 787 S.W.2d 193, 195 (Tex. App.—Corpus Christi–Edinburg 1990, pet. ref'd) ("[A]fter the trial court dismissed [the juror,] appellant objected to the court's ruling but failed to state any grounds for his objection. Error is not preserved in the absence of a timely and *specific* objection.").

Even setting aside the preservation issue and assuming without deciding that the claim of error was preserved, we rule against Appellant on the merits. He contends that Juror No. 61's "cough the morning [that] testimony was to commence fell well below what the Court of Criminal Appeals has found [to] constitute[] a physical disability, and the trial [court] took no steps to avoid dismissing him." Appellant's focus solely on Juror No. 61's cough ignores the full picture that the trial court described in detail on the record.[3] The trial court noted that Juror No. 61 was "coughing heavily" and "excessively," was wearing a mask, was grabbing his chest, and was continuing to cough ("a yucky kind of phlegmy cough") while walking down the hall. Appellant contends that the trial court "intentionally avoided testing" Juror No. 61 for COVID, that "[a] medical diagnosis or test would have supported the trial court's decision," and that the trial could have recessed to allow Juror No. 61 to seek medical attention. Appellant, however, ignores that the trial court is allowed to review a juror's symptoms and has the "discretion to determine whether [a] juror ha[s] become disabled." *Johnson v. State*, No. 07-11-0211-CR, 2012 WL 592201, at *2 (Tex. App.—Amarillo Feb. 23, 2012, no pet.) (mem. op., not designated for publication). Moreover, the trial court took steps to help alleviate Juror No. 61's symptoms (e.g., giving him water and throat lozenges), but those steps were to no avail. When the

---

[3]Appellant's contention that "[t]he voir dire transcript contains nothing suggesting a juror was ill" provides no support for his argument as voir dire took place two days prior to the trial's commencement, and nothing in Article 36.29 requires a juror to display illness during voir dire in order to be found disabled. *See generally* Tex. Code Crim. Proc. Ann. art. 36.29.

trial court questioned Juror No. 61, he stated that he was sick to a degree that he could no longer continue sitting as a juror.

Because Juror No. 61's symptoms impaired his ability to perform the functions of a juror, we cannot say that the trial court abused its discretion by declaring him disabled. *See id.* (stating that other courts have upheld disability findings in cases where jurors "complained of . . . temporary illnesses that impaired their ability to perform the functions of a juror," and upholding trial court's disabled-juror determination because juror had food poisoning); *Hughes*, 787 S.W.2d at 195 (holding no abuse of discretion in juror-disability determination when trial court dismissed a juror who "felt queasy, had headaches, . . . had vomited," and had appeared to be in "distress"); *cf. Frazier*, 2022 WL 5240393, at *5 (holding no abuse of discretion in juror-disability determination when juror was under a quarantine order due to COVID and could not "fully and fairly perform[] the functions of a juror"). We therefore overrule the portion of Appellant's first issue challenging the trial court's disabled-juror determination.

### 2. Proceeding with Eleven Jurors

In the remainder of his first issue, Appellant argues that the trial court erred by proceeding with eleven jurors. Appellant's argument fails due to our previous disposition.

As explained by the Austin Court of Appeals,

10

> Having held that the trial court did not abuse its discretion by dismissing the juror, we hold that the court's decision to continue the trial with eleven jurors because of the juror's disability did not amount to an abuse of discretion. On the contrary, once the court determined that the juror was disabled, it was required to continue the trial. *See Hill* . . . , 90 S.W.3d [at] 315 . . . ; *Carrillo v. State*, 597 S.W.2d 769, 771 (Tex. Crim. App. [[Panel Op.]] 1980).

*Engledow v. State*, Nos. 03-04-00765-CR, 03-04-00768-CR, 2006 WL 357890, at *3 (Tex. App.—Austin Feb. 16, 2006, no pet.) (mem. op., not designated for publication); *see Taylor v. State*, No. 02-17-00414-CR, 2018 WL 3672755, at *1 (Tex. App.—Fort Worth Aug. 2, 2018, no pet.) (mem. op., not designated for publication) (stating that the Court of Criminal Appeals has interpreted Article 36.29(a) as not only authorizing the trial court to continue with eleven jurors in the event one is disabled but as requiring the trial court to do so).

Because the trial court properly determined that Juror No. 61 was disabled, it was required to continue the trial with eleven jurors. Accordingly, we overrule the remainder of Appellant's first issue.

## III. Alleged Refusal to Probe or to Allow Probe of Seated Juror's Bias

In his second issue, Appellant argues that the trial court abused its discretion by refusing his requests to explore the potential bias of Juror No. 23 when it was discovered during trial that he had formerly been related by marriage to the case detective. Specifically, Appellant argues that (1) the trial court did not allow him to question Juror No. 23, and (2) the trial court's inquiry into Juror No. 23's potential bias was insufficient because it did not make specific inquiries into the juror's

relationship with the detective.  Even if we assume that Appellant preserved these issues, case law does not provide for his desired mid-trial questioning of a juror when Appellant failed to ask any questions during voir dire about the juror's relationship to a testifying witness.

### A.    What the Record Shows

During the third day of testimony, the State called Sergeant Scott Christensen, who was the detective assigned to this case.  The proceedings for the day ended while Christensen was being cross-examined.

The next morning before cross-examination resumed, the trial court announced that Juror No. 23 had mentioned to one of the bailiffs that he knew Christensen.  The trial court stated that it alone would question Juror No. 23 and asked if either side objected to this process.  Appellant said, "No, Judge."  The trial court also gave the parties an opportunity to supply questions for the trial court to ask, and defense counsel stated, "[J]ust the extent of their relationship, . . . how they interacted and things like that, how close they were."

The trial court asked how Juror No. 23 knew Christensen, and Juror No. 23 said, "Years ago, I used to be married to his wife's sister," which he later summarized as being Christensen's "brother-in-law in law."  Juror No. 23 said that he had seen Christensen from time to time but that they were not close.  The trial court reiterated the juror's duties, and Juror No. 23 stated that he understood that he could not allow his prior relationship with Christensen to influence his verdict.  Juror No. 23 said that

he could render a verdict based solely on the law and the evidence and that he would not violate his oath.

After allowing Juror No. 23 to return to the jury room, the trial court asked Christensen to return to the stand to continue the prior day's cross-examination, and the State offered an exhibit to which Appellant had no objection. After these events, Appellant sought to have the trial court hear argument on Juror No. 23's ability to be impartial. Appellant contended (1) that Juror No. 23 could not be impartial because he and Christensen were "related by marriage"[4] and (2) that "we don't know the depth of the relationship, how the relationship ended, things like that." The trial court asked Appellant to clarify what additional questions he wanted the trial court to ask Juror No. 23, but rather than suggesting additional questions, Appellant reiterated his belief that Juror No. 23 could not be impartial. The following discourse took place between the trial court and defense counsel:

> THE COURT: [J]ust because you say it with conviction, that don't make it so. What is it that's in the record other than the fact that there was a relationship there that says that he can't follow his oath?
>
> [DEFENSE COUNSEL]: I have no direct evidence. He didn't say that he couldn't, but although he --
>
> THE COURT: No, in fact, he said he could. In fact, he said he would, and he was very -- and I was here, and you were here, too, and we questioned him outside the presence of everybody else. I was there to see him testify. I was there to evaluate his credibility, and I find that

_____

[4]As noted in the State's brief, Juror No. 23 and Christensen were not related by marriage; Juror No. 23 stated that "[y]ears ago, [he] used to be married to [Christensen's] wife's sister."

13

he was being credible when he said he would not consider it. He was very adamant about that. He didn't hesitate. He didn't look up and think about it. He looked me right in the eye and said he wouldn't consider it, and he would follow his oath, and he understood the oath. So I -- I'm hard-pressed to figure out -- I mean, you may have thought about striking [Juror No. 23] had we known that [he was married to Christensen's sister-in-law during] voir dire, but nobody asked that question on voir dire.

[DEFENSE COUNSEL]: True.

THE COURT: Nobody asked if they knew any of the witnesses that you knew were going to testify.

Defense counsel stated that this was a unique situation, and the trial court reiterated that it presumed that Juror No. 23 was going to follow his oath. Defense counsel then asked the trial court to excuse Juror No. 23 "out of an abundance of caution," which would have left ten jurors and would have resulted in a mistrial. The trial court denied that request.

## B. Applicable Law

The constitutional underpinnings of an impartial jury have been summarized by the Tyler Court of Appeals:

The Sixth Amendment to the United States Constitution and Article 1, Section 10 of the Texas Constitution guarantee criminal defendants the right to trial by an impartial jury. U.S. Const. Amend. VI[]; Tex. Const. art. 1, § 10. The protection under the Texas Constitution is identical to that offered by the United States Constitution. *See Jones v. State*, 982 S.W.2d 386, 391 (Tex. Crim. App. 1998).

*Fulton v. State*, 576 S.W.3d 905, 922–23 (Tex. App.—Tyler 2019, pet. ref'd).

14

"Normally, challenges for cause are made before the jury is sworn. Under some circumstances[,] it is proper to challenge a juror for cause after the jury is sworn[] if the juror's bias is not disclosed before then." *Saldana v. State*, No. 04-94-00803-CR, 1996 WL 209748, at *2 (Tex. App.—San Antonio May 1, 1996, pet. ref'd) (not designated for publication) (citing *Lee v. State*, 301 S.W.2d 114, 115–16 (Tex. Crim. App. 1957)).

But usually, the duty is placed on defense counsel to ask questions during voir dire that would reflect whether a juror can be challenged:

> It is incumbent upon counsel to specifically ask questions [that] will determine whether they have a right to challenge the veniremember. The jury panel does not know the statutory challenges for cause and thus the prospective jurors likely do not know what the parties are trying to determine during voir dire. It is counsel's responsibility to ask questions specific enough to elicit the answers they require.

*Webb v. State*, 232 S.W.3d 109, 113 (Tex. Crim. App. 2007).

When a person serves on a jury but is partial, biased, or prejudiced and that juror is selected not through the fault or lack of diligence of defense counsel but based on inaccurate answers in voir dire, a new trial can be obtained. *Fulton*, 576 S.W.3d at 923 (citing *Von January v. State*, 576 S.W.2d 43, 45 (Tex. Crim. App. [Panel Op.] 1978)).

*Fulton* and *Saldana* further explain why the trial court is not required to allow a defendant to question a juror after the start of trial and why the trial court has no duty to question a juror after the start of trial when questions that would indicate a

15

potential bias were not asked during voir dire. *Fulton*, 576 S.W.3d at 923; *Saldana*, 1996 WL 209748, at *3. As explained in *Fulton*, the trial court is not required to allow a defendant to question a juror after the start of trial when the defendant failed to ask the requisite question during voir dire:

> Because Appellant's trial counsel made no attempt during voir dire to ask the veniremembers whether they knew any potential witnesses, despite trial counsel['s] knowing the witnesses' identities, the juror never withheld any information. *See Armstrong v. State*, 897 S.W.2d 361, 363–64 (Tex. Crim. App. 1995). Thus, Appellant argues that he has a constitutional right to ask jurors additional questions after the start of trial if the need arises. This proposition was specifically dispelled by the court in *Franklin*[ *v. State*]. 138 S.W.3d [351,] 358 [(Tex. Crim. App. 2004)] ("But we do not hold here that Franklin had a constitutional right to ask the juror additional questions during trial.")[.]
>
> Appellant offers no other authority, nor are we aware of any, that requires a trial court to allow a defendant to question a juror, after the start of trial, about matters he could have questioned the juror about during his voir dire examination.

576 S.W.3d at 923. Similarly, in *Saldana*, the court explained why the trial court has no duty to question a juror after the start of trial when the defendant failed to ask the veniremembers if they knew a witness:

> [I]n this case, [appellant] had every opportunity to ask the jury panel during voir dire whether they knew any of the witnesses [that] the [S]tate planned to call. The record indicates [that] the defense had been provided before voir dire with the [S]tate's witness list. Yet [appellant] failed to ask a single question about Rodolfo Ruiz.
>
> The Texas Court of Criminal Appeals has held that "defense counsel has an obligation to ask questions calculated to bring out that information [that] might be said to indicate a juror's inability to be impartial and truthful. . . . Unless defense counsel asks such questions, the material information [that] a juror fails to disclose is not really

16

'withheld.'" *Armstrong . . .* , 897 S.W.2d [at] 363–64 . . . . In that case, the court refused to reverse a murder conviction even though the jury foreperson, it was later learned, had been friends with the prosecutor at appellant's trial for twenty-seven years[,] and . . . her husband and the prosecutor had been best men in each other's weddings. However, no one asked her about her relationship to the prosecutor. Although not on point, *Armstrong* is applicable to the present case because it shows that a juror does not mislead the court by failing to inform the court of a relationship with one of the actors when the juror is never asked.

In the absence of discovery of a misleading answer during voir dire, there is no requirement for the trial court to conduct a hearing of a sworn and seated juror when new information surfaces concerning a juror's potential bias.

1996 WL 209748, at *3.

## C.    Analysis

The State points out that Appellant did not preserve his arguments as to Juror No. 23 because Appellant did not object (1) to the trial court's statement that it alone was going to question the juror or (2) to the sufficiency of the trial court's inquiry into Juror No. 23's ability to be impartial. As noted above in the section describing what the record shows, Appellant stated, "No, Judge," when asked if he had any objection to the trial court's decision to not allow the parties to question Juror No. 23, and Appellant did not specifically object to the trial court's decision to not further question Juror No. 23 after he had explained his relationship to Christensen and had stated that he would uphold his oath. *See* Tex. R. App. P. 33.1(a); *Lovill*, 319 S.W.3d at 691.

But even assuming that Appellant had preserved his arguments, *Fulton* and *Saldana* show that Appellant's arguments are without merit. Appellant's brief cites to

17

case law relating to voir dire and how it is constitutional error "[w]here the trial court disallows the defendant to ask a proper question on voir dire," but Appellant ignores that he was not denied the opportunity to ask the desired questions during voir dire. Instead, he admitted to the trial court that he had failed to ask during voir dire if any of the veniremembers knew the detective, who had been listed on the State's witness list. Moreover, Appellant morphs the failure to fulfill his duty during voir dire—to specifically ask questions that would have determined whether he had a right to challenge the veniremember—into a duty for the trial court to sufficiently question a juror mid-trial. *See Webb*, 232 S.W.3d at 113. This stance fails to recognize that the trial court never had a duty to question Juror No. 23 and that when the trial court did so, it delved into the juror's relationship to the detective and was assured that the juror could be impartial. *See Saldana*, 1996 WL 209748, at *3. Because no bias was discovered, Appellant's right to a trial by an impartial jury was not infringed.

Accordingly, we overrule his second issue.

## IV. Conclusion

Having overruled Appellant's two issues, we affirm the trial court's judgments.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: February 27, 2025

18